[Cite as *In re T.W.*, 2015-Ohio-5213.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| T.W., DELINQUENT CHILD | | |
| | : | |
| | | **CASE NO. 2015-A-0013** |


Appeal from the Ashtabula County Court of Common Pleas, Juvenile Division, Case No.13 JA 115.

Judgment:  Reversed and remanded.


*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092  (For Plaintiff-Appellee, State of Ohio).

*Timothy Young*, Ohio Public Defender, and *Brooke M. Burns*, Assistant State Public Defender, 250 East Broad Street, Suite 1400, Columbus, OH  43215-9308 (For Defendant-Appellant, Minor).


THOMAS R. WRIGHT, J.

{¶1}  Appellant, T.W., timely appeals the decision classifying him as a tier II juvenile sex offender under R.C. 2152.83(A)(1).  He argues that the trial court's order untimely classified him upon his release from a facility that does not constitute a "secured facility;" that his classification violates the Double Jeopardy Clause; that his classification violates the Equal Protection Clause; and that it violates the Due Process Clause because his punishment extends beyond the age of the juvenile court's jurisdiction.  We reverse and remand.

{¶2} T.W. was charged as a juvenile delinquent for kidnapping, in violation of R.C. 2905.01(A)(4), with a sexual-motivation specification under R.C. 2941.147. He was also charged with three counts of rape in violation of R.C. 2907.02(A)(2) and breaking and entering in violation of R.C. 2911.13(B). T.W. was born on May 13, 1995 and was 17 at the time of the offenses. He eventually admitted to breaking and entering and the kidnapping charge with the sexual-motivation specification. He was committed to the Ohio Department of Youth Services ("DYS") for concurrent terms including a six-month term for breaking and entering and a one-year minimum commitment, up to his 21st birthday, for the kidnapping offense. He was also ordered to complete sex offender treatment. The trial court's January 8, 2014 judgment entry states in part, "The Court recommends that the Ohio Department of Youth Services consider the Juvenile's placement at Paint Creek, if appropriate. * * * A sexual offender classification hearing shall be scheduled prior to the release of the Juvenile from the Department of Youth Services."

{¶3} On approximately January 23, 2014, T.W. was transferred from the Indian River Correctional Facility to the Paint Creek facility for his court-ordered treatment. At this time, James Darnell, Superintendent of the Indian River Correctional facility, wrote to the trial court judge advising him that T.W. was transferred "for programming purposes" to the Paint Creek Youth Center. Darnell states in his letter that "the transfer does not reflect a decrease in security level."

{¶4} Approximately one year later, T.W. was classified as a tier II sex offender at the January 20, 2015 classification hearing shortly before his scheduled release from the Paint Creek facility.

{¶5}    Appellant asserts four assigned errors on appeal:

{¶6}    "The Ashtabula County Juvenile Court erred when it classified T.W. as a tier II juvenile sex offender registrant because it did not classify him upon his release from a secure facility. (A-1; T.pp. 13-16). R.C. 2152.83(A)(1). *In re J.A.D.*, 11th Dist. Portage No. 2012-P-0006, 2012-Ohio-5226.

{¶7}    "The Ashtabula County Juvenile Court erred when it classified T.W. as a tier II juvenile sex offender registrant on January 20, 2015, in violation of his right to be free from double jeopardy. *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684. (A-1; T.pp. 13-16).

{¶8}    "The Ashtabula County Juvenile Court erred when it classified T.W. as a tier II juvenile sex offender registrant because T.W.'s status as a mandatory registrant under R.C. 2152.83(A) violates the Equal Protection Clauses of the United States Constitution and Ohio Constitutions.  (A-1; T.pp. 13-16).

{¶9}    "The Ashtabula County Juvenile Court erred when it classified T.W. as a tier II juvenile sex offender registrant because the imposition of a punitive sanction that extends beyond the age of jurisdiction of the juvenile court violates a child's right to due process under the United States and Ohio Constitutions. (A-1; T.pp. 13-16)."

{¶10}  Appellant first argues that the trial court erred in untimely classifying him upon his release from Paint Creek, which is not a secure facility, and as such, the classification must be vacated.  We review this question of law de novo.  *Aubry v. Univ. of Toledo Med. Ctr.*, 10th Dist. Franklin No. 11AP-509, 2012-Ohio-1313, ¶10.

{¶11}  R.C. 2152.83(A)(1) states:

3

**{¶12}** "The court that adjudicates a child a delinquent child shall issue as part of the dispositional order or, if the court commits the child for the delinquent act to the custody of a secured facility, **shall issue at the time of the child's release from the secure facility,** an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with [certain] sections * * * of the Revised Code if all of the following apply: * * *." (Emphasis added.)

**{¶13}** Unlike the permissive language set forth in R.C. 2152.83(B), "an offender, such as appellant, that is subject to the proceedings defined under R.C. 2152.83(A)(1) may *only* be classified 'at the time of [his or her] release from the secure facility' to which he or she was committed at the dispositional hearing." (Emphasis in original.) *In re J.A.D*, 11th Dist. Portage No. 2012-P-0006, 2012-Ohio-5226, ¶14.

**{¶14}** R.C. 2950.01(K)[1] defines a "secure facility" as "any facility that is designed and operated to ensure that all of its entrances and exits are locked and under the exclusive control of its staff and to ensure that, because of that exclusive control, no person who is institutionalized or confined in the facility may leave the facility without permission and supervision."

**{¶15}** Appellant challenges the timeliness of his classification, not whether the substantive prerequisites for classification were satisfied. The trial court relied entirely on the letter issued by Superintendent Darnell in concluding that T.W. was being released from a "secure facility" at the time of the classification hearing finding T.W. a tier II sex offender registrant. The trial court judge ignored defense counsel's request to elicit testimony from the Paint Creek facility representatives present at the

---

1. The current version of R.C. 2950.01 sets for the same definition for "secure facility" under subsection (O).

4

classification hearing. Defense counsel did not proffer the testimony of the employees from Paint Creek, but instead summarized their statements in her argument explaining that the Paint Creek staffers indicated that the doors on the cottages are not locked, that the juveniles are free to roam, and that it is not a secure facility.

{¶16} The state argues that T.W.'s argument, if successful, would preclude it from stipulating to the placement of other juveniles at the Paint Creek facility for rehabilitation purposes and that this result would be contrary to the common goal of juvenile rehabilitation. The trial court agreed and concluded:

{¶17} "I agree with the State of Ohio, that if this Court were to consider its main objective, and that being rehabilitation of a juvenile delinquent, then if the Department of Youth Services chooses to place a juvenile at a facility such as Paint Creek, then if it is defined as not that being secure and, therefore, the hearing has to be held in the beginning, then every prosecutor in the State of Ohio is going to object * * *.

{¶18} "Now, the second reason that I am going to classify [T.W.] at this time is that I don't think the Supreme Court of Ohio is going to require recourse on the trial level to have a crystal ball. I don't know whether Paint Creek may have put on a new roof, new gutters, a secure door, bars on the windows, or torn down the fence that was around there if there was one. Point being, I don't know what Paint Creek is or was. I have to rely on what the agency that has custody of him says it is.

{¶19} "Filed February 12, 2014 in this Case * * * is a letter under the Ohio Department of Youth Services' letterhead, John R. Kasich, Governor; Harvey J. Reed, Director, and signed by Mr. James Darnell, Superintendent of the Indian River Juvenile

5

Correctional Facility, and I'm going to take the time to read this letter into the record. * * *.

{¶20} "Dear Judge Hague: Youth [T.W.] was transferred from Indian River Correctional Facility to Paint Creek Youth Center on January 23, 2013. [sic] Youth was transferred for programming purposes. Please note that the transfer does not reflect a decrease in security level."

{¶21} Thereafter, the trial court concluded that based on a plain reading of the letter, T.W. was transferred from one secure facility to another. Thus, the mandatory classification hearing set forth in R.C. 2152.83(A)(1) was not triggered upon his transfer to Paint Creek because T.W. had not been "released" from a secure facility, but simply transferred to another one.

{¶22} T.W. argues because the court did not classify him at the time of his release from Indian River Correctional Facility, it was subsequently precluded from doing so upon his release from Paint Creek. He directs our attention to *In re Mudrick*, 5th Dist. Stark No. 2007CA00038, 2007-Ohio-6800, which deals with nearly the precise issue. In *Mudrick*, the trial court dismissed the state's request to schedule a classification hearing under R.C. 2152.83(B) because the request was untimely and not in compliance with applicable law. Accordingly, the trial court did not have jurisdiction to conduct the classification hearing. Mudrick was committed to a secure facility and he was subsequently transferred to the Lighthouse Youth Center Paint Creek, "a staff secure residential treatment center." *Id*. at ¶15.

{¶23} Testimony at Mudrick's hearing established that "Paint Creek conducts constant staff monitoring of juvenile offenders, and physical restraints are used as

6

needed to secure juvenile residents.  However, there was ample evidence offered at the hearing to establish that Paint Creek does not have locked doors.  Rather, security is maintained only through staff monitoring.  Accordingly, pursuant to the definition of 'secure facility' * * *, Paint Creek is not a secure facility as it does not have all of its entrances and exits locked.  Therefore, the trial court did not err in determining it lacked jurisdiction to conduct the juvenile sex offender registration hearing pursuant to R.C. 2152.83* * *."  *Id.* at ¶16; *see also In re T.F.*, 4th Dist. Highland No. 09CA37, 2010-Ohio-4773, ¶6 (noting that the trial court in that case held the juvenile's sex offender registration classification hearing *upon his transfer to* Paint Creek Youth Center a "staff-secure DYS placement facility.")

**{¶24}** We agree with the court in *In re Mudrick*.  Because the governing statute is clear and unambiguous, we must apply it as it was written.  *In re I.A.*, 140 Ohio St.3d 203, 206, 2014-Ohio-3155, 16 N.E.3d 653.  A plain reading of R.C. 2152.83(A)(1) and the definition of "secure facility" require a juvenile's classification hearing to be conducted upon his release from a  "secure facility," which is defined as having locked entrances and exits.  R.C. 2905.01(K).  There was no evidence before the trial court in our case as to whether the facility at Paint Creek had locked entrances and exits and thus, constitutes a "secure facility."  In fact, the trial court judge acknowledged *not* knowing if the Paint Creek facility satisfied the statutory definition in T.W.'s case.  The plain language of R.C. 2152.83(A)(1) and the definition of a "secure facility" are unambiguous, and as such, must be applied as so.  *In re Mudrick* at ¶15.

**{¶25}** We disagree that our decision will have a detrimental effect on the number of juveniles being referred to the Paint Creek facility for rehabilitation.  Instead,

assuming the Paint Creek facility is not a "secure facility," trial courts will simply have to conduct the requisite classification hearings sooner, i.e., upon the juvenile's transfer to Paint Creek.

{¶26} Accordingly, appellant's first assignment of error has merit. We reverse the trial court's decision classifying T.W. as a tier II sex offender registrant and remand this case to the trial court. On remand, the trial court shall take evidence on this issue and determine if the Paint Creek facility satisfied the definition of a "secure facility" at the time of T.W.'s release. If the facility satisfies the clear statutory definition, then the trial court shall reclassify T.W. as a juvenile offender registrant.

{¶27} T.W. also argues that his classification violates his right to be free from double jeopardy, his right to due process, and his right to equal protection under the law. We disagree. Statutes enacted by the Ohio General Assembly enjoy a strong presumption of constitutionality. *See State v. Cook*, 83 Ohio St.3d 404, 409, 1998 Ohio 291, 700 N.E.2d 570 (1998). Further, legislation will not be declared unconstitutional without a showing of unconstitutionality beyond a reasonable doubt. *Id.* The party challenging the legislation has the burden of proving a statute's unconstitutionality. *State v. Thompkins*, 75 Ohio St.3d 558, 560, 1996 Ohio 264, 664 N.E.2d 926 (1996).

{¶28} The Seventh District Court of Appeals in *In re M.R.*, 7th Dist. Jefferson No. 13 JE 30, 2014-Ohio-2623, has squarely addressed these issues in an analogous case.[2] We agree with its disposition of each. As to the alleged double jeopardy violation, *In re M.R.* held:

2. Two of these constitutional issues, i.e., due process and double jeopardy, are the subject of an appeal and have recently been briefed to the Ohio Supreme Court in *In re D.S.*, 2014-0607, appeal from 5th Dist. Licking No. 13CA58, 2014-Ohio-867. The appeal from the Seventh District decision *In re M.R.* to the Supreme Court was stayed pending its decision in *In re D.S.*

8

**{¶29}** "R.C. 2152.83(A) specifically instructs the juvenile court to conduct the classification at release rather than at disposition where the 16 or 17 year old is committed to a secure facility. * * * Because the statute clearly provides for a deferred classification until the time of release from the secure facility, the juvenile had no 'legitimate expectation of finality' with regards to classification at the time of the disposition order committing him to a secure facility and thus there is no double jeopardy violation." *Id.* at ¶22, 29.

**{¶30}** We likewise agree with the disposition of the appellant's equal protection violation claim in *In re M.R.*, in which it explains that the differential treatment in the statute, i.e., distinct classification standards for different aged offenders, is rationally related to a legitimate interest. Specifically, the age differentials in R.C. 2152.83 were designed to protect the public from the older delinquents as well as to provide the younger offenders more opportunity to reform and rehabilitate. *Id.* at ¶43-46; *In re B.D.*, 11th Dist. Portage No. 2011-P-0078, 2012-Ohio-4463, ¶31-32; *In re J.M.,* 3d Dist. Wyandot No. 16-12-01, 2012-Ohio-4109, ¶32.

**{¶31}** As for T.W.'s fourth assigned error, there was no violation of his due process rights. Instead, we have previously held that "there is no per se prohibition against Ohio juvenile courts imposing a registration requirement that extends beyond a person's attainment of age 21." *In re N.Z.*, 11th Dist. Lake No. 2012-L-100, 2014-Ohio-157, ¶44 citing *State ex rel. N.A. v. Cross*, 125 Ohio St.3d 6, 2010-Ohio-1471, ¶12-13; *In re M.R.* at ¶66-68. Accordingly, T.W.'s second, third, and fourth assignments of error lack merit.

9

{¶32} T.W.'s first assigned error has merit, and the decision of the Ashtabula County Court of Common Pleas, Juvenile Division is reversed and remanded.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.