LUPER SCHUSTER, J.
{¶ 1} Plaintiffs-appellants, Electronic Classroom of Tomorrow ("ECOT"), Jeremy Aker, individually, and as custodial parent of ECOT student CA, and Darrel DeBerry, individually, and as custodial parent of ECOT student JB (collectively "ECOT Families"), appeal from (1) a decision and entry of the Franklin County Court of Common Pleas denying ECOT's and the ECOT Families' motions for preliminary *1273 injunction against defendant-appellee, Ohio Department of Education ("ODE"); and (2) the final decision and judgment of the trial court finding ODE is entitled to judgment in its favor as a matter of law. For the following reasons, we affirm.
I. Facts and Procedural History
{¶ 2} ECOT, in operation since 2000, is an online or "e-school" in which students do not attend traditional, brick-and-mortar buildings, but instead attend classes through a computer by logging in to ECOT's online platform to access educational curriculum. Students enrolled in ECOT also have access to other non-computer educational opportunities, including field trips.
{¶ 3} Pursuant to R.C. 3314.01(B), ECOT is considered a "community school," which is "a public school, independent of any school district, and is part of the state's program of education." As a public school, a community school such as ECOT receives funding from the state of Ohio based on the number of full-time equivalent ("FTE") students enrolled in the community school. R.C. 3314.08(C). The community schools self-report the number of FTE students to ODE through the education management information system ("EMIS"). ODE then has the right to "adjust" the payment to the community school "to reflect any enrollment of students in community schools for less than the equivalent of a full school year." R.C. 3314.08(H).
{¶ 4} ODE performs periodic FTE reviews of community schools to investigate whether a funding adjustment is warranted in a given year. Such a review involves ODE personnel visiting the community school and identifying the records ODE would like to view in order to confirm the school's reported FTE numbers for the previous academic year. If, through the review, ODE discovers it owes additional funding to the community school, ODE has 30 days to provide the additional funding. However, if the review results in a finding that the community school cannot substantiate the number of FTE students for which it received funding, ODE can reduce the school's funding amount. The reduction, or "clawback," occurs on a going-forward basis by reducing, over an extended period of time, future state dollars paid to the community school. (Sept. 13, 2016 Tr. Vol. II at 179-80.) A community school that disagrees with ODE's initial determination on funding has a right to an administrative appeal to the State Board of Education. R.C. 3314.08(K)(2). The State Board of Education's decision on the appeal is the agency's final determination on the appropriate funding for the community school for the given academic year. R.C. 3314.08(K)(2)(d).
{¶ 5} ODE has performed FTE reviews of ECOT in 2001, 2002, 2003, 2005, 2006, 2011, and, most recently, in 2016. ODE typically conducts reviews of community schools every five years, though it will sometimes conduct a follow-up FTE review the next year if a significant discrepancy appears.
{¶ 6} Following ODE's 2001 FTE review, ODE and ECOT began discussing how to document student attendance and participation for the 2002-2003 FTE review. The parties engaged in negotiations on a funding agreement, and there were several discussions about whether the funding agreement was to apply only to the 2002-2003 academic year or whether it would apply for the 2002-2003 academic year and thereafter. The final funding agreement entered in January 2003 is silent as to duration.
{¶ 7} In the 2015-2016 academic year, ECOT claimed a right to state funding for *1274 more than 15,000 FTE students, resulting in more than $100 million in state educational funds. ECOT learned in January 2016 that it would be subject to an FTE review for the 2015-2016 academic year. John Wilhelm, the ODE area coordinator, sent ECOT a letter listing the types of records he would be requesting from ECOT in connection with the review. Wilhelm made clear in the letter that ODE would be requesting durational records showing how long or how often students had accessed learning opportunities over the course of the academic year. In its prior FTE reviews of ECOT, ODE had not requested such so-called "durational data." (Sept. 19, 2016 Tr. Vol. IV at 249, 255.).
{¶ 8} ODE publishes its FTE review manual on its website. In January 2016, ODE published the new 2016 FTE review manual, intending it to be used in connection with its 2016 reviews. This manual contained additional information regarding durational data for e-school FTE reviews beyond what the 2015 FTE review manual contained. ECOT and other e-schools expressed concern to ODE about the appropriateness of using an FTE review manual that had first been published midway through the academic year. Thus, ODE agreed that it would use the 2015 FTE review manual for its 2016 FTE reviews.
{¶ 9} From March 28 to March 30, 2016, ODE conducted its initial FTE review of ECOT, using the files ECOT provided of 750 students that ODE had identified in advance of the preliminary review, including durational data. Each of the 750 student files included a report showing log-on and log-off times for the specified student. Those reports showed that, on average, students spent only about one hour per day logged on to ECOT's online educational platform.
{¶ 10} Disputing the appropriateness of the use of durational data in the FTE review, ECOT asserted the information provided was only a sample printout from its learning management system and was intended merely as an example of the type of form that ECOT might be able to prepare in the future should ODE eventually require durational data as part of its review. Brittny Pierson, the deputy superintendent and chief of staff for ECOT, testified she made it clear to Wilhelm that the durational reports did not present accurate information related to the students' participation and was instead a potential format for future consideration.
{¶ 11} ODE was set to conduct the final 2016 year-end FTE review of ECOT in July 2016, and ODE determined its area coordinators should again review durational data as part of the final review. However, ECOT did not provide durational data to ODE at the year-end review, asserting it did not keep track of this type of data as ODE had never before requested such data.
{¶ 12} On July 8, 2016, three days before the final 2016 FTE review was scheduled to begin, ECOT filed a complaint against ODE seeking specific performance, declaratory and injunctive relief, asking the trial court to block ODE from obtaining and considering durational data during the FTE review. ECOT alleged violations of R.C. 3314.08, of R.C. Chapter 119's rulemaking process, and a breach of the 2002-2003 funding agreement. That same day, ECOT filed a motion for a temporary restraining order and preliminary injunction against ODE. The trial court denied the temporary restraining order on July 11, 2016. Subsequently, on August 1, 2016, ECOT filed its first amended complaint for specific performance of the funding agreement, asserting a violation of R.C. 3314.08(H)(3), and for declaratory and injunctive relief. ECOT also added the ECOT Families as additional plaintiffs, asserting *1275 ODE's FTE review violated the ECOT Families' equal protection rights. On August 22, 2016, the ECOT Families filed a motion for a preliminary injunction.
{¶ 13} Meanwhile, on July 20, 2016, ODE served discovery on ECOT, including requests for the durational data that ECOT had refused to provide during the final three-day review of the 2015-2016 academic year. Following ODE's July 23, 2016 motion to compel discovery, which the trial court granted, ECOT provided ODE with the durational data that ODE sought, allowing ODE to perform a durational review of ECOT's reported FTE.
{¶ 14} The trial court conducted a six-day hearing, beginning on September 12, 2016, on ECOT's claims that (1) ECOT is entitled to specific performance of the funding agreement; (2) ODE violated R.C. 3314.08(H)(3) by stating its intent to evaluate ECOT's FTE funding based on the amount of time a student is logged in to ECOT's educational platform, seeking declaratory and injunctive relief preventing ODE from evaluating and/or calculating e-school FTE funding based on anything other than "offered" learning opportunities; (3) the funding agreement is valid and enforceable, and it precludes ODE from imposing a durational requirement as part of the FTE funding process; (4) any durational requirements contained in the FTE review manuals are unlawful because they are administrative rules that ODE did not promulgate in accordance with Chapter 119 of the Revised Code; and (5) ODE's FTE review of ECOT was a purposeful effort to single out the ECOT Families for disparate treatment related to public school choice in violation of the ECOT Families' equal protection rights.
{¶ 15} After post-hearing briefing, the trial court, in a September 30, 2016 decision and entry, denied ECOT's motion for preliminary injunction and the ECOT Families' motion for preliminary injunction, determining the plaintiffs failed to demonstrate a substantial likelihood of success on the merits of any of their claims. ECOT and the ECOT Families appealed that ruling to this court, but this court dismissed the appeals for lack of a final appealable order. Electronic Classroom of Tomorrow v. Ohio Dept. of Edn. , 10th Dist. No. 16AP-692 (Nov. 22, 2016) (judgment entry).
{¶ 16} Following dismissal of the appeal, the parties stipulated in the trial court that the preliminary injunction hearing be deemed a final trial on the merits. The trial court then issued a final decision and judgment on December 14, 2016, concluding (1) the funding agreement did not apply to the 2015-2016 FTE review and, thus, ODE was not in breach of the funding agreement when it performed the 2015-2016 FTE review; (2) ODE did not violate R.C. 3314.08(H)(3) by requesting and reviewing durational data; (3) the FTE review manual is not an invalid administrative rule; and (4) ODE did not violate the equal protection rights of the ECOT Families. Accordingly, the trial court determined ODE was entitled to judgment in its favor on all of ECOT's claims as a matter of law. ECOT and the ECOT Families both timely appeal, and this court consolidated the appeals for purposes of record filing, briefing, and oral argument. Electronic Classroom of Tomorrow v. Ohio Dept. of Edn. , 10th Dist. No. 16AP-863 (Jan. 10, 2017) (journal entry).
II. Assignments of Error
{¶ 17} ECOT assigns the following errors for our review:
1. The trial court erred in dismissing and entering judgment against the Electronic Classroom of Tomorrow ("ECOT") as to its claims based on the Ohio Department of Education's *1276 ("ODE") violation of the R.C. Chapter 119 rule-making process.
2. The trial court erred in dismissing and entering judgment against ECOT on its claim that ODE is violating/has violated R.C. 3314.08.
3. The trial court erred in dismissing and entering judgment against ECOT on its claim that ODE breached the 2003 Funding Agreement.
4. The trial court erred in dismissing and entering judgment against ECOT on its claim for specific performance of the Funding Agreement.
5. The trial court erred in denying ECOT's requests for preliminary and permanent injunctive relief based on ODE's violations of Chapter 119 and R.C. 3314.08.
{¶ 18} The ECOT Families assign the following error for our review:
The trial court erred in dismissing the claims of, and entering judgment against, plaintiffs/appellants Jeremy Aker, individually, and as custodial parent of current student of the Electronic Classroom of Tomorrow ("ECOT") and minor child CA, and Derrell DeBerry, individually, and as custodial parent of current ECOT student and minor child JB (the "ECOT Families").
For ease of discussion, we address ECOT's assignments of error out of order.
III. ECOT's Second Assignment of Error-The Funding Statute
{¶ 19} In its second assignment of error, ECOT argues the trial court erred when it concluded ODE was not in violation of R.C. 3314.08. More specifically, ECOT asserts the trial court erroneously interpreted R.C. 3314.08, the funding statute related to community schools, to allow ODE to consider durational data in making its FTE determinations. ECOT asserts the language of the funding statute requires ODE to provide funding based only on whether ECOT offered learning opportunities to a student regardless of whether the student accessed, or participated in, such learning opportunities.
{¶ 20} Statutory interpretation is a question of law subject to de novo review. State v. Fraternal Order of Police of Ohio, Inc., Ohio Labor Council, Inc. , 2017-Ohio-1382, 89 N.E.3d 103, ¶ 12, citing Licking Hts. Local School Dist. Bd. of Edn. v. Reynoldsburg City School Dist. Bd. of Edn. , 2013-Ohio-3211, 996 N.E.2d 1025, ¶ 9. A court's duty is to give effect to the words used in a statute, not to delete or insert words. State v. Maxwell , 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, ¶ 10. "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." Sears v. Weimer , 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.
{¶ 21} In ascertaining the meaning of a statute, a court's paramount concern is legislative intent. State v. Jackson , 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 34, citing State ex rel. Asberry v. Payne , 82 Ohio St.3d 44, 47, 693 N.E.2d 794 (1998). "All statutes relating to the same general subject matter must be read in pari materia, and in construing these statutes in pari materia, this court must give them a reasonable construction so as to give proper force and effect to each and all of the statutes." State ex rel. Herman v. Klopfleisch , 72 Ohio St.3d 581, 585, 651 N.E.2d 995 (1995), citing United Tel. Co. of Ohio v. Limbach , 71 Ohio St.3d 369, 372, 643 N.E.2d 1129 (1994) ; State ex rel. Cordray v. Midway Motor Sales, Inc. , 122 Ohio St.3d 234, 2009-Ohio-2610, 910 N.E.2d 432, ¶ 25 (noting statutory provisions *1277 related to the same subject matter should be construed harmoniously unless they are irreconcilable). "In reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." State v. Wilson , 77 Ohio St.3d 334, 336, 673 N.E.2d 1347 (1997), citing MacDonald v. Bernard , 1 Ohio St.3d 85, 89, 438 N.E.2d 410 (1982).
{¶ 22} The parties agree that community schools receive funding on a FTE basis. As pertinent here, R.C. 3314.08(H)(3) provides:
The department shall determine each community school student's percentage of full-time equivalency based on the percentage of learning opportunities offered by the community school to that student , reported either as number of hours or number of days, is of the total learning opportunities offered by the community school to a student who attends for the school's entire school year. However, no internet- or computer-based community school shall be credited for any time a student spends participating in learning opportunities beyond ten hours within any period of twenty-four consecutive hours. Whether it reports hours or days of learning opportunities, each community school shall offer not less than nine hundred twenty hours of learning opportunities during the school year.
(Emphasis added.) ECOT looks to the first sentence of R.C. 3314.08(H)(3) and asserts the use of the word "offered" in conjunction with the term "learning opportunities" must mean that a community school need only show it offered a student learning opportunities without regard to the student's participation in such learning opportunities in order to receive FTE funding. However, a plain reading of the statute defies ECOT's interpretation of the funding statute.
{¶ 23} As the trial court noted in its decision, the very next sentence of R.C. 3314.08(H)(3) states "no internet- or computer-based community school shall be credited for any time a student spends participating in learning opportunities beyond ten hours within any period of twenty-four consecutive hours." (Emphasis added.) Were we to agree with ECOT that the term "learning opportunities" has no durational component and the term "offered" means only "made available" regardless of whether the student accepted or participated in any learning opportunity, we would render meaningless this second sentence of R.C. 3314.08(H)(3). See Wilson at 336, 673 N.E.2d 1347 (a court shall not pick out and disassociate one sentence from the context of the whole statute). Instead, by stating in the second sentence of R.C. 3314.08(H)(3) that a community school will not be credited for participation beyond ten hours per day, the General Assembly must mean that a community school will be credited for participation less than or equal to ten hours per day. Stated another way, the duration of a student's participation is essential to determining whether a student has been "offered," or supplied with, learning opportunities for purposes of calculating FTE.
{¶ 24} We also note that the phrase "learning opportunities" appears in the immediately preceding subsection of the funding statute, R.C. 3314.08(H)(2), which states, in relevant part:
For purposes of applying this division and divisions (H)(3) and (4) of this section to a community school student, "learning opportunities" shall be defined in the contract, which shall describe both classroom-based and non-classroom-based learning opportunities and shall be in compliance with criteria and *1278 documentation requirements for student participation which shall be established by [ODE] .
(Emphasis added.) Thus, the General Assembly specifically contemplated student participation, not just the offering of an educational opportunity, in determining a student's FTE status. It is notable that R.C. 3314.08(H)(2) references R.C. 3314.08(H)(3), and vice versa. Reading these subsections in pari materia, it would be inconsistent to define "learning opportunities" as a measure of student participation in one subsection of the statute but to apply a definition of "learning opportunities" that only requires simple enrollment in the very next subsection.
{¶ 25} R.C. 3314.08(H)(3) also provides a formula for calculating a student's FTE status. Pursuant to the statute, the academic year for a community school must consist of a minimum of 920 hours. R.C. 3314.08(H) then directs that a student's FTE status is a fraction determined by the number of hours supplied to a student over the total number of hours in the school's academic year. Were we to agree with ECOT's interpretation of the funding statute, the calculation method outlined in R.C. 3314.08(H)(3) would be wholly unnecessary as every enrolled student technically would be "offered" the minimum 920 hours of learning opportunities, regardless of whether a specific student actually participated in any of those hours. Such an interpretation would render this subsection meaningless. Instead, we agree with ODE that a plain reading of the statute compels the conclusion that although enrollment is a necessary predicate to funding, the amount of funding per student is dependent on a measure of student participation. Thus, we agree with the trial court that ODE did not violate R.C. 3314.08(H)(3) when it requested and reviewed durational data of ECOT students.
{¶ 26} We overrule ECOT's second assignment of error.
IV. ECOT's First Assignment of Error-Administrative Rulemaking
{¶ 27} In its first assignment of error, ECOT argues the trial court erred when it determined the portion of the FTE review manuals related to the gathering of durational data were not improperly promulgated administrative rules in violation of R.C. Chapter 119.[1]
{¶ 28} A "rule" is "any rule, regulation, or standard, having a general and uniform operation, adopted, promulgated, and enforced by any agency," and does not include "any internal management rule of an agency unless the internal management rule affects private rights." R.C. 119.01(C). Agencies statutorily authorized to adopt rules, including ODE, must "comply with the procedure prescribed in sections 119.01 to 119.13" for the adoption of rules, and "the failure of any agency to comply with such procedure shall invalidate any rule." R.C. 119.02.
{¶ 29} " 'It is the effect of the [document], not how the [agency] chooses to *1279 characterize it,' " that determines whether an agency-issued document constitutes a rule. State ex rel. Saunders v. Indus. Comm. , 101 Ohio St.3d 125, 2004-Ohio-339, 802 N.E.2d 650, ¶ 26, quoting Ohio Nurses Assn., Inc. v. State Bd. of Nursing Edn. & Nurse Registration , 44 Ohio St.3d 73, 76, 540 N.E.2d 1354 (1989).
{¶ 30} ECOT argues the portion of the FTE review manual related to measuring student participation is a rule because it directed ODE to review durational data. However, as we noted above, it is the language of the funding statute, itself, that gives ODE the authority to review durational data in determining the FTE status of community school students. These manuals merely explain how FTE reviewers should conduct their reviews consistent with the funding statute. Thus, even without the FTE review manuals, ODE acted within its authority when it requested and reviewed durational data, as the statutory scheme authorizes such a procedure. Accordingly, we agree with the trial court that the FTE review manuals are not "rules" for purposes of R.C. Chapter 119 and, thus, cannot form the basis of any claim by ECOT.
{¶ 31} We overrule ECOT's first assignment of error.
V. ECOT's Fifth Assignment of Error-Injunctive Relief
{¶ 32} In its fifth assignment of error, ECOT argues the trial court erred when it failed to grant ECOT preliminary and permanent injunctive relief based on ODE's alleged violations of R.C. 3314.08(H)(3) and R.C. Chapter 119.
{¶ 33} In determining whether a preliminary injunction is warranted, a trial court looks to four factors: (1) whether the evidence presents a substantial likelihood that the plaintiff will prevail on the merits; (2) whether denying the injunction will cause the plaintiff to suffer irreparable injury; (3) whether granting the injunction will cause unjustifiable harm to third parties; and (4) whether the injunction serves the public interest. Cuyahoga Re-Entry Agency v. Ohio Dept. of Rehab. & Corr. , 10th Dist. No. 11AP-740, 2012-Ohio-2034, 2012 WL 1622612, ¶ 31, citing Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co., Gen. Commodities Div. , 109 Ohio App.3d 786, 790, 673 N.E.2d 182 (10th Dist. 1996). "A party seeking a permanent injunction 'must demonstrate by clear and convincing evidence that they are entitled to relief under applicable statutory law, that an injunction is necessary to prevent irreparable harm, and that no adequate remedy at law exists.' " McDowell v. Gahanna , 10th Dist. No. 08AP-1041, 2009-Ohio-6768, 2009 WL 4931886, ¶ 9, quoting Acacia on the Green Condominium Assn., Inc. v. Gottlieb , 8th Dist. No. 92145, 2009-Ohio-4878, 2009 WL 2964373, ¶ 18. Whether to grant or deny an injunction is a matter within the discretion of the trial court, and a reviewing court will not disturb the judgment of the trial court absent an abuse of discretion. Garono v. State , 37 Ohio St.3d 171, 173, 524 N.E.2d 496 (1988). An abuse of discretion connotes a decision that was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore , 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).
{¶ 34} Having already determined that R.C. 3314.08(H)(3) permits ODE to consider durational data in calculating FTE status for funding purposes, and that ODE did not violate the administrative rulemaking provisions of R.C. Chapter 119 when it issued the portion of the FTE review manuals related to gathering durational data, ECOT is unable to demonstrate a substantial likelihood of success on its claim that ODE cannot review durational data of ECOT students. Thus, the trial court did *1280 not abuse its discretion in denying ECOT's motion for preliminary injunction. Moreover, because we have already determined ECOT is not entitled to relief based on an alleged violation of either R.C. 3314.08 or R.C. Chapter 119, the trial court similarly did not abuse its discretion in denying ECOT's request for permanent injunctive relief. Accordingly, we overrule ECOT's fifth assignment of error.
VI. ECOT's Third and Fourth Assignments of Error-The Funding Agreement
{¶ 35} ECOT's third and fourth assignments of error are interrelated, and we address them jointly. In its third assignment of error, ECOT argues the trial court erred in dismissing ECOT's claim of breach of the funding agreement. In its fourth assignment of error, ECOT argues the trial court erred in dismissing its claim for specific performance of the funding agreement. Taken together, these two assignments of error assert the trial court erred when it failed to conclude that the funding agreement controlled the issue of whether ODE could request and review durational data related to its FTE reviews of ECOT students.
{¶ 36} The construction and interpretation of written contracts involves issues of law that an appellate court reviews de novo. Alexander v. Buckeye Pipeline Co. , 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus. The purpose of contract construction is to realize and give effect to the parties' intent. Skivolocki v. E. Ohio Gas Co. , 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. "[T]he intent of the parties to a contract resides in the language they chose to employ in the agreement." Shifrin v. Forest City Ents., Inc. , 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992). When " 'the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.' " Holdeman v. Epperson , 111 Ohio St.3d 551, 2006-Ohio-6209, 857 N.E.2d 583, ¶ 12, quoting Shifrin at 638, 597 N.E.2d 499.
{¶ 37} The 2002-2003 funding agreement states, in pertinent part:
1. Documentation of Enrollment. The School shall maintain in its paper and/or electronic files for each student all forms necessary to enroll a student as required by law. State funding for students enrolled in the School is due and shall continue to be paid to the School until the student graduates, withdraws (per the School Board policy) from School, or is no longer eligible to attend the School pursuant to the provisions of the Community School Contract.
The school shall maintain in its files records of the following:
a. Documentation or evidence of delivery and installation of the computer and all necessary related hardware;
b. The successful connection to the School's website, where the student can access electronic curriculum and other electronic resources offered by the school;
c. Delivery, by any means, of the curriculum materials necessary to begin education of the student (For each student, ECOT shall retain documentation of the delivery of curriculum materials and the date and mode of delivery.);
d. The completion of the student's first assignment.
A student shall be considered enrolled and funding shall begin upon the satisfaction of one or more of the provisions of this section.
2. Documentation of Learning Opportunities. State law currently requires that *1281 each student must be presented with at least 920 hours of learning opportunities per academic year. These learning opportunities may come from an array of different educational opportunities, such as direct (including computerized) instruction, participation in curriculum related activities, assignments and events, readings, field trips, tutoring, etc.
For the purposes of an enrollment audit, the School shall maintain in its paper and/or electronic files for each student the following documentation:
a. Learning opportunity hours will be verified by a certificated ECOT employee with appropriate administrative oversight and documentation that each such employee understands the significance and implications of his/her signature;
b. A record of grades earned and proficiency test results while a student is at ECOT;
c. Documentation federally required of Special Needs students for which the school requests additional funding[.]
(ODE Ex. A, 2002-2003 Funding Agreement, attached to ODE Ex. 1001.) Relying on this language, ECOT argues the 2002-2003 funding agreement specifically established the documentation ECOT needed in order to document student enrollment and support its claimed FTE funding. Additionally, ECOT asserts the 2002-2003 funding agreement specifically established the documentation ECOT needed to maintain in order for ODE to determine whether ECOT had presented 920 hours of learning opportunities to a student. In other words, ECOT asserts the 2002-2003 funding agreement prevents ODE from considering any durational data in determining FTE funding.
{¶ 38} ECOT asserts the 2002-2003 funding agreement was still in effect and, thus, applies to the 2015-2016 FTE review of ECOT students. However, the 2002-2003 funding agreement did not provide the duration of the agreement. "Generally, if a term stating the duration of a written [contract] is omitted, then the contract is only partially integrated and extrinsic evidence is admissible so that a court may determine the missing term." Miller v. Lindsay-Green, Inc. , 10th Dist. No. 04AP-848, 2005-Ohio-6366, 2005 WL 3220215, ¶ 40, citing Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio , Inc. , 15 Ohio St.3d 321, 323-24, 474 N.E.2d 271 (1984). The trial court considered extrinsic evidence on this question during the six-day hearing and determined the parties intended the 2002-2003 funding agreement to apply only to the 2002 and 2003 FTE reviews. We agree.
{¶ 39} During the negotiation process on the 2002-2003 funding agreement, the parties exchanged letters regarding the duration. ECOT proposed that the agreement would apply to FTE reviews in the "2002-2003 school year and thereafter ." (Emphasis added.) (Sept. 19, 2016 Tr. Vol. IV at 162.) ODE responded by proposing that the agreement instead would apply to FTE reviews conducted in 2002 and 2003, dropping the "and thereafter" language that ECOT had proposed. After the parties exchanged several communications restating their positions, ECOT ultimately acquiesced in its last letter to ODE on the subject, dropping the "and thereafter" language. (ODE Ex. 1377.) Thus, we agree with the trial court's conclusion that the extrinsic evidence demonstrates the parties intended the 2002-2003 funding agreement would apply only to the 2002 and 2003 FTE reviews.
{¶ 40} Because the 2002-2003 funding agreement was no longer in effect for the 2015-2016 FTE review, it cannot form the basis of ECOT's claim of breach of contract or specific performance. Accordingly, the trial court did not err in dismissing *1282 ECOT's claims of breach of the funding agreement and specific performance, and we overrule ECOT's third and fourth assignments of error.
VII. The ECOT Families' Sole Assignment of Error-Equal Protection
{¶ 41} In their sole assignment of error, the ECOT Families argue the trial court erred in concluding their claim of a violation of their rights under the Equal Protection Clause fails. The ECOT Families assert ODE treated them differently than other students enrolled at other community and e-schools in Ohio, resulting in a violation of their equal protection rights.
{¶ 42} "The Equal Protection Clauses of both the United States and the Ohio Constitution guarantee that no one will be denied the same protection of the laws enjoyed by others in like circumstances." State v. Klembus , 146 Ohio St.3d 84, 2016-Ohio-1092, 51 N.E.3d 641, ¶ 8, citing McCrone v. Bank One Corp. , 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 6. "The standards for assessing equal-protection claims are essentially the same under the state and federal constitutions." Id ., citing McCrone at ¶ 7.
{¶ 43} In an equal protection claim, government actions that affect suspect classifications or fundamental interest are subject to strict scrutiny by the courts. Eppley v. Tri-Valley Local School Dist. Bd. of Edn. , 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 14. In the absence of a suspect classification or fundamental interest, the state action is subject to a rational basis test. Id . Under the rational basis test, we will uphold the government action if it bears a rational relationship to a legitimate governmental interest. State v. Topolosky , 10th Dist. No. 15AP-211, 2015-Ohio-4963, 2015 WL 7737686, ¶ 30, citing Adamsky v. Buckeye Local School Dist. , 73 Ohio St.3d 360, 362, 653 N.E.2d 212 (1995).
{¶ 44} The ECOT Families concede that ODE's action through its 2015-2016 FTE review does not burden a fundamental right or target a suspect class. We therefore apply the rational basis test to evaluate the constitutionality of ODE's 2015-2016 FTE review of ECOT. Arbino v. Johnson & Johnson , 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 64.
{¶ 45} Pursuant to the rational basis test, the government conduct survives constitutional scrutiny if it is reasonably related to implementation of a legitimate government interest. Topolosky at ¶ 32, citing State v. Lowe , 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 18. Thus, the rational basis test requires a two-step analysis. First, a court must determine whether there exists a valid state interest. Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray , 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, ¶ 19. Second, a court must determine whether the state's method or means chosen to advance that interest is rational. Id .
{¶ 46} The ECOT Families assert ODE inappropriately singled out certain e-schools for FTE review but did not apply the durational data requirement to other e-schools not selected for FTE review in 2015-2016. We agree with the trial court, however, that the state has a legitimate government interest in conducting FTE reviews of community schools that receive state funding to ensure those schools are entitled to the funds they claim. Moreover, although the ECOT Families assert ODE had "no explanation" for its decision to conduct an FTE review of ECOT in 2015-2016 and rely on durational data in doing so, the record indicates that ODE had a practice of having a standard review cycle of five years for FTE reviews. ECOT's last FTE review was in 2011, so the 2015-2016 *1283 FTE review aligned with the five-year review cycle. That other e-schools in Ohio were not on the path for a five-year review in 2015-2016 does not render ODE's FTE review of ECOT in 2015-2016 lacking in a reasonable relationship to the implementation of ODE's legitimate government interest in protecting public funds. Thus, we additionally agree with the trial court that ODE's practice of a five-year review cycle constitutes a rational basis for ODE's 2015-2016 FTE review of ECOT.
{¶ 47} Because ODE had a rational basis to conduct the 2015-2016 FTE review of ECOT, the trial court did not err in concluding the ECOT Families' equal protection claim fails. Accordingly, we overrule the ECOT Families' sole assignment of error.
VIII. Disposition
{¶ 48} Based on the foregoing reasons, the trial court did not err in determining that R.C. 3314.08(H)(3) permitted ODE to consider durational data in its 2015-2016 FTE review of ECOT, that ODE did not violate its R.C. Chapter 119 rulemaking authority, that the 2002-2003 funding agreement did not apply to ODE's 2015-2016 FTE review of ECOT, that ECOT was not entitled to preliminary or permanent injunctive relief, and that the ECOT Families did not establish a valid equal protection claim. Having overruled ECOT's five assignments of error and the ECOT Families' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
TYACK, P.J., and DORRIAN, J., concur.

ECOT additionally argues that R.C. 3301.13 imposes a more stringent requirement on ODE to use the processes described in R.C. Chapter 119 when performing any action to prescribe minimum standards. In pertinent part, R.C. 3301.13 states "[i]n the exercise of any of its functions or powers, including the power to make rules and regulations and to prescribe minimum standards the department of education, and any officer or agency therein, shall be subject to Chapter 119. of the Revised Code." This language, however, merely confirms that ODE is a state agency subject to the rulemaking requirements of R.C. Chapter 119 when appropriate. It does not, as ECOT argues, require ODE to make a "rule" every time ODE acts. Because R.C. 3301.13 specifically directs that ODE is subject to R.C. Chapter 119 rulemaking, we analyze this argument under R.C. Chapter 119.