[Cite as *In re C.D.*, 2018-Ohio-4509.]

'IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

In the Matter of:                          :

[C.D.].                          :

                          :

 

 

No. 17AP-744
(C.P.C. No. 14JU-12029)

(REGULAR CALENDAR)

D E C I S I O N

Rendered on November 6, 2018

**On brief:** *Timothy Young*, Ohio Public Defender, and *Timothy B. Hackett*, for appellant. **Argued:** *Timothy B. Hackett.*

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Katherine J. Press*, for appellee State of Ohio. **Argued:** *Katherine J. Press.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

LUPER SCHUSTER, J.

{¶ 1} Appellant, C.D., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, classifying C.D. as a tier II sex offender/child-victim offender. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On September 19, 2014, a complaint was filed in the trial court alleging C.D. committed one count of rape, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree if committed by an adult, and one count of gross sexual imposition, in violation of R.C. 2907.05(a)(4), a felony of the third degree if committed by an adult. On October 1, 2015, the trial court accepted a plea agreement between C.D. and appellee, State of Ohio, and adjudicated C.D. a delinquent minor for committing the two offenses alleged in the complaint. C.D. was 17 years old when he committed the offenses. For these offenses, the

trial court committed C.D. to the legal custody of the Ohio Department of Youth Services ("DYS") for "institutionalization in a secure facility" for a minimum of 2 years or until C.D. reached 21 years of age. (Oct. 1, 2015 Jgmt. Entry at 1.) Pursuant to the plea agreement, C.D. would not apply for early release, he would oppose any such motion filed on his behalf, and he would not be released until the trial court held a sex offender registration hearing.

{¶ 3} Upon receiving custody of C.D., DYS placed him at the Circleville Juvenile Correctional Facility ("CJCF"). A few weeks later, on October 21, 2015, the trial court filed an entry stating DYS "has determined that [C.D.] would be better rehabilitated at the Paint Creek Youth Center." (Jgmt. Entry at 1.) The trial court "recognize[d] that the Paint Creek Youth Center is staff secure." (Jgmt. Entry at 1.) The entry further states, "Therefore, the court orders that [DYS] consider [C.D.] for transfer to the Paint Creek Youth Center. The child's case is to be reviewed and screened for their program by [DYS]. If the child is deemed an appropriate candidate for the Paint Creek Youth Center, [DYS] is to transfer the child to the non-secure facility known as Paint Creek Youth Center, Ross County, Ohio." (Jgmt. Entry at 1.) On November 5, 2015, DYS transferred C.D. from CJCF to Paint Creek Youth Center ("Paint Creek"). In June 2016, DYS transferred C.D. back to CJCF.

{¶ 4} In December 2016, the trial court scheduled a sex offender classification hearing pursuant to R.C. 2152.83(A) for May 17, 2017, one week before C.D.'s 21st birthday and his release from DYS custody. On May 3, 2017, C.D. objected to the court's scheduling of the sex offender classification hearing. C.D. asserted that because the court did not classify him at the time of his "release from a secure facility on November 5, 2015," the court lacked jurisdiction to classify him pursuant to R.C. 2152.83(A) in May 2017. (Obj. to Classification at 1.) The matter was heard on May 17, 2017 before a trial court magistrate, who overruled C.D.'s objection and classified him as a tier II sex offender/child-victim offender. C.D. objected to the magistrate's decision, again arguing the court lacked jurisdiction to classify him pursuant to R.C. 2152.83(A) in May 2017 based on his earlier transfer from CJCF to Paint Creek in November 2015. The trial court overruled C.D.'s objection and adopted the magistrate's decision.

{¶ 5} C.D. timely appeals.

## II. Assignment of Error

{¶ 6} C.D. assigns the following error for our review:

> The juvenile court erred as a matter of law when it determined that C.D. had not been released from a secure facility, and classified him as a tier II juvenile offender registrant, in violation of R.C. 2152.83(A)(1).

## III. Discussion

{¶ 7}    In his sole assignment of error, C.D. asserts the trial court erred in classifying him as a tier II sex offender/child-victim offender.  C.D. argues that because the trial court did not classify him at the time of his November 2015 transfer from CJCF to Paint Creek as required under R.C. 2152.83(A)(1), its classification of him as a juvenile offender registrant in May 2017 must be vacated.  The state argues C.D. was not "released" for the purpose of R.C. 2152.83(A)(1) when he was transferred from CJCF to Paint Creek in November 2015. Therefore, disposition of C.D.'s sole assignment of error turns on the application of R.C. 2152.83(A)(1) to the facts of this case.

{¶ 8}    Statutory construction is an issue of law subject to de novo review.  *Electronic Classroom of Tomorrow v. Ohio Dept. of Edn.*, 10th Dist. No. 16AP-863, 2017-Ohio-5607, ¶ 20.  In ascertaining the meaning of a statute, a court's paramount concern is legislative intent.  *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, ¶ 34, citing *State ex rel. Asberry v. Payne*, 82 Ohio St.3d 44, 47 (1998).  A court's duty is to give effect to the words used in a statute, not to delete or insert words.  *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, ¶ 10.  "In reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body."  *State v. Wilson*, 77 Ohio St.3d 334, 336 (1997), citing *MacDonald v. Bernard*, 1 Ohio St.3d 85, 89 (1982).  "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation.  An unambiguous statute is to be applied, not interpreted."  *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus. "Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed.  Otherwise, allegations of ambiguity become self-fulfilling."  *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, ¶ 11.

{¶ 9}    Juvenile courts are statutory courts, created by the General Assembly.  *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, ¶ 14.  As statutory courts, juvenile courts have

limited jurisdiction and may exercise only the authority conferred upon them by the General Assembly. *Id.* In this case, the trial court's authority to classify C.D. as a juvenile offender registrant is at issue.

{¶ 10} R.C. 2152.83(A)(1) generally governs a juvenile court's classification of sex offenders who were 16 or 17 years old at the time of the offense. This statute provides in pertinent part as follows:

> The court that adjudicates a child a delinquent child shall issue as part of the dispositional order or, if the court commits the child for the delinquent act to the custody of a secure facility, shall issue at the time of the child's release from the secure facility an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code[.]

{¶ 11} Pursuant to this statute, the juvenile court must classify a child adjudicated delinquent for committing a sexual offense either as part of the dispositional order, or, if the child is committed "to the custody of a secure facility," at the time the child is "release[d] from the secure facility." R.C. 2152.83(A)(1); *In re T.D.*, 12th Dist. No. CA2010-01-002, 2010-Ohio-6081, ¶ 23, *rev'd on other grounds, In re Cases Held for the Decision in In re D.J.S.*, 130 Ohio St.3d 253, 2011-Ohio-5349.

{¶ 12} For the purpose of this section, a "secure facility" is defined as: "any facility that is designed and operated to ensure that all of its entrances and exits are locked and under the exclusive control of its staff and to ensure that, because of that exclusive control, no person who is institutionalized or confined in the facility may leave the facility without permission or supervision." R.C. 2950.01(O); R.C. 2152.83(G). The phrase "at the time of the child's release" is not defined by statute, but has been interpreted as requiring the classification to occur not necessarily "simultaneous with release, but merely within a reasonable time given docket constraints and appropriate time for evaluations appurtenant to classification." *In re D.C.*, 7th Dist. No. 15 HA 0006, 2016-Ohio-8550, ¶ 6; *In re B.W.*, 2d Dist. No. 1702, 2007-Ohio-2096, ¶ 14. The term "release" is not statutorily defined for the purpose of this section.

{¶ 13} Here, based on the delinquency adjudication in October 2015, the trial court committed C.D. to the custody of DYS for his institutionalization at a secure facility for a

minimum of two years or until he reached the age of 21. DYS immediately placed C.D. at CJCF, a "secure facility," as defined by R.C. 2950.01(O). Soon thereafter, the trial court directed DYS to consider transferring C.D. to Paint Creek for rehabilitation. The court characterized Paint Creek as "staff secure," but also as a "non-secure facility." (Oct. 21, 2015 Jgmt. Entry at 1.) The basis of those characterizations is unclear from the record. On November 5, 2015, DYS transferred C.D. to Paint Creek, where he remained until DYS transferred him back to CJCF in June 2016. C.D. resided at CJCF until his release from DYS custody on his 21st birthday on May 24, 2017.

{¶ 14} The parties dispute whether C.D.'s transfer from CJCF to Paint Creek in November 2015 constituted a "release from [a] secure facility" for the purpose of R.C. 2152.83(A)(1). C.D. argues that the trial court was required to hold a hearing and classify him at the time of that release, and because it did not so act, it lost its jurisdiction to classify him. Thus, pursuant to this reasoning, C.D. had to be classified, if at all, when he was transferred to Paint Creek in November 2015. Conversely, the state argues that the term "release" within R.C. 2152.83(A)(1) should not be viewed in isolation, but within the context of the juvenile court's authority to commit a child to DYS. The state reasons that because a child is committed to the custody of DYS, not the facility itself, the "release from a secure facility" in effect refers to the release of the child from the custody of DYS.

{¶ 15} In support of his position, C.D. cites cases in which a child's transfer from a DYS secure facility to Paint Creek was considered a "release from the secure facility" for the purpose of R.C. 2152.83(A)(1). *See In re D.C.* at ¶ 7, 12 (determining that the juvenile was "release[d] from the secure facility" for the purpose of R.C. 2152.83(A)(1) when he was transferred to Paint Creek from a secure facility); *In re Mudrick*, 5th Dist. No. 2007CA-38, 2007-Ohio-6800 (finding the trial court lacked jurisdiction to hold a classification hearing pursuant to R.C. 2152.83(B)(1)[1] upon the juvenile's release from DYS custody because, at that time, the juvenile resided at Paint Creek, which the court determined was not a secure

---

[1] Juvenile sex offenders are treated "differently with respect to whether and how they are classified as juvenile offender registrants based on their age at the time of the offense." *In re R.G.*, 11th Dist. No. 2016-G-0064, 2016-Ohio-8426, ¶ 11. R.C. 2152.83(B) applies to juvenile offenders who were 14 or 15 years of age at the time of committing the offense, and it gives the juvenile court discretion in whether to classify an offender in that category as a juvenile offender registrant. R.C. 2152.83(A), which applies to 16 and 17-year-old offenders, requires the juvenile court to classify those offenders as juvenile offender registrants.

facility because it did not have all of its entrances and exits locked); *see also In re T.W.*, 11th Dist. No. 2015-A-0013, 2015-Ohio-5213, ¶ 25-26 (determining that, if Paint Creek was not a secure facility for the purpose of R.C. 2152.83(A)(1), the trial court was required to classify the juvenile at the time of transfer to Paint Creek; however, because the record did not indicate whether Paint Creek had locked entrances and exits, the court remanded the matter to take evidence on this issue and determine if Paint Creek was a secure facility at the time of that transfer).

{¶ 16} While there are multiple cases supporting C.D.'s assertion that a transfer to Paint Creek, assuming it does not have locks at its entrances and exits, constitutes a release from a secure facility for the purpose of R.C. 2152.83(A)(1), at least one other court has found that such a transfer is not a release from a secure facility. In *In re T.D.*, the court rejected the assertion that the transfer of a juvenile in DYS custody from a secure facility to Paint Creek constituted a "release" for the purpose of R.C. 2152.83(A)(1). *In re T.D.* at ¶ 18-19. The court considered the juvenile's transfer to Paint Creek as "a temporary transfer to a rehabilitation facility where he received substance abuse and sex offender treatment. While the juvenile court prompted DYS to consider appellant for transfer to [Paint Creek], the court placed the determination as to appellant's eligibility for the program within the discretion of DYS." *Id.* at ¶ 19. In reaching its finding that the juvenile had not been released when transferred from a secure facility to Paint Creek, the court found it significant that DYS retained custody of the juvenile "for the duration of his treatment" at Paint Creek. *Id.* at ¶ 22. Thus, the law in Ohio is not settled on the issue of the meaning of "release from the secure facility" for the purpose of R.C. 2152.83(A)(1). In the case before us, however, it is unnecessary to resolve the issue of whether C.D.'s transfer from a secure facility to Paint Creek constituted a "release from [a] secure facility" for the purpose of R.C. 2152.83(A)(1).

{¶ 17} Regardless whether C.D.'s transfer from CJCF to Paint Creek in November 2015 constituted a "release from [a] secure facility" for the purpose of R.C. 2152.83(A)(1), he was transferred back to CJCF after his residency and treatment at Paint Creek, and then classified when he was released from DYS's custody in May 2017. Thus, the issue here is not whether C.D. was "release[d] from [a] secure facility" when he was transferred from CJCF to Paint Creek in November 2015; instead, the dispositive issue is whether the trial court properly applied R.C. 2152.83(A)(1) when C.D. was released into the community in

May 2017.  It is undisputed that C.D. was institutionalized at CJCF in 2017 pursuant to the trial court's October 2015 entry, which committed him to the custody of DYS for a minimum of two years or until he reached the age of 21.  C.D. unquestionably was "released from [a] secure facility" in May 2017 because he was released from DYS custody at CJCF and placed into the community at that time.

{¶ 18} Relying on the Supreme Court of Ohio's decision in *State ex rel. Jean-Baptiste v. Kirsch*, 134 Ohio St.3d 421, 2012-Ohio-5697, C.D. argues that the trial court "lost" its jurisdiction to classify him after it did not classify him when he was transferred from CJCF to Paint Creek in November 2015.  But this reliance is misplaced because *Kirsch* is factually distinguishable.  In *Kirsch*, the court held the juvenile court lacked jurisdiction to proceed with classifying the appellant as a juvenile offender registrant in a delinquency case after he turned 21 years old.  The court stated that "R.C. 2152.83(A)(1) plainly states that the court shall issue the classification order at the time of the child's release from a secure facility.  This is a clear expression of the legislature's intent that juvenile courts lose their ability to hold classification hearings after that time."  *Id.* at ¶ 30.  "R.C. 2152.83(A)(1) requires that the court issue an order classifying the child as a juvenile-offender registrant at the time of the child's release from the custody of a secure facility."  *Id.* at ¶ 32.  Thus, in *Kirsch*, the court emphasized a juvenile court's lack of jurisdiction to classify a juvenile sex offender if the classification does not occur at the time of the child's release.  Here, as outlined above, in November 2015, C.D. was transferred to Paint Creek and then back to CJCF in June 2016, before he was ultimately released from DYS custody in May 2017.  Therefore, even if C.D. is correct that the trial court "lost" its ability to classify him in connection with his transfer from CJCF to Paint Creek because it did not classify him at the time of that transfer, the court in effect regained the authority to classify C.D. when he was released from CJCF in May 2017.

{¶ 19} Because the trial court properly issued its order classifying C.D. as a juvenile offender registrant at the time of his release from the custody of a secure facility in May 2017, we overrule C.D.'s sole assignment of error.

## IV. Disposition

{¶ 20} Having overruled C.D.'s sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch.

*Judgment affirmed.*

DORRIAN and HORTON, JJ., concur.