INTERNATIONAL DIAMOND EXCHANGE JEWELERS, INC., Appellee,

v.

U.S. DIAMOND & GOLD JEWELERS, INC. et al., Appellants.

[Cite as *International Diamond Exchange Jewelers, Inc. v. U.S. Diamond & Gold Jewelers, Inc.* (1991), 70 Ohio App.3d 667.]

Court of Appeals of Ohio,
Montgomery County.

No. 13174.

Decided Dec. 5, 1991.

668

*William W. Lambert* and *Theodore Gudorf,* for appellee.

*John Paul Rieser* and *Diane F. Marx,* for appellants.

FAIN, Presiding Judge.

On Friday, November 29, 1991, plaintiff-appellee, International Diamond Exchange Jewelers, Inc. ("International"), after notice and hearing, obtained a preliminary injunction against defendants-appellants, U.S. Diamond & Gold Jewelers, Inc. and John Stafford ("USDG"). The injunction, issued by the Montgomery County Common Pleas Court, enjoined USDG from airing a radio advertisement, the full text of which is appended to this decision and entry. The injunction also enjoined USDG from "engaging in any other conduct that infers [*sic*] that International * * * and Mr. Thruston are not honest and that infers [*sic*] that International * * * continues to have legal problems with its advertising practices."

The complaint for the injunction was filed late on the afternoon of Wednesday, November 27, just two days before the hearing and issuance of the preliminary injunction. There was testimony that about forty percent of International's business is done in the three and a half weeks that follow Thanksgiving (November 28th this year), and USDG's sales presumably also reflect a brisk Christmas season. Consequently, there was a need for prompt consideration of International's prayer for injunctive relief. Judge James Gilvary, of the Montgomery County Common Pleas Court, was prompt and efficient in responding to this need, and we have tried to be equally prompt and efficient.

Judge Gilvary issued the preliminary injunction after an evidentiary hearing on the morning of November 29th. USDG immediately appealed. This matter is before this court upon USDG's motion for a stay of the preliminary injunction and for its dissolution, and also upon International's motion to dismiss the appeal for lack of a final appealable order. International has also moved to strike or to dismiss USDG's motion for a stay of the preliminary injunction.

This court has considered the memoranda submitted by both parties, as well as the arguments made by both parties at a hearing in chambers on Monday,

December 2, 1991. For the reasons that follow, we have decided to deny International's motions, to deny USDG's motion to dissolve the preliminary injunction, and to grant USDG's motion for a stay of execution of the preliminary injunction.

I

International contends that this court is without jurisdiction to consider USDG's appeal for lack of a final appealable order, and also for the reason that there are other claims in the complaint that remain unresolved and there has been no certification pursuant to Civ.R. 54(B).

Civ.R. 54(B) has application when there are two or more distinct claims, only one of which is the subject of a final appealable order. At the in-chambers argument, counsel for International admitted that its claims against USDG, although seeking different forms of relief and being predicated upon somewhat different legal grounds, all arise out of the radio advertisement that USDG has been airing. Consequently, we hold that the claims remaining unresolved in this case are not separate and distinct claims for relief for purposes of the application of Civ.R. 54(B), and, therefore, no certification is required.

International relies upon *State, ex rel. Tollis, v. Cuyahoga Cty. Court of Appeals* (1988), 40 Ohio St.3d 145, 532 N.E.2d 727, for the proposition that a court of appeals is without jurisdiction to consider an appeal from a preliminary injunction because a preliminary injunction is not a final appealable order. In that case, a writ of prohibition was issued, based upon the appellate court's lack of jurisdiction to consider an appeal from a preliminary injunction issued to enjoin a municipality from proceeding with a sewer assessment. The Ohio Supreme Court held that a preliminary injunction issued to preserve the status quo pending consideration of a complaint for final injunctive relief is not a final appealable order, so that a court of appeals does not have jurisdiction to consider an appeal from the preliminary injunction.

Although there is nothing in the opinion in *Tollis, supra,* to suggest that a situation like the one in the case before us, involving a prior restraint on speech, is distinguishable, we nevertheless conclude that a preliminary injunction that constitutes a prior restraint upon the exercise of the right of free speech is a different situation that requires, as an incident of the First Amendment to the United States Constitution, an immediate appellate forum for the review of any such injunction. *National Socialist Party of America v. Skokie* (1977), 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96.

Because the right of free speech must be protected against the chilling effect resulting from even its *temporary* infringement, the United States Supreme Court held in *Skokie* at 44, 97 S.Ct. at 2206, 53 L.Ed.2d at 98, that:

" * * * If a State seeks to impose a restraint of this kind, it must provide strict procedural safeguards * * *, including immediate appellate review * * *. Absent such review, the State must instead allow a stay. * * * " (Citations omitted.)

Given that an immediate appellate forum for review of an order that imposes a prior restraint upon the exercise of free speech is necessitated by the federal Constitution, we hold that in such cases it is not practical for the appellant to wait until the case has been concluded in the trial court before he may challenge the order. Whether it is practical for an appellant to wait until the case has been concluded in the trial court before appealing from an otherwise interlocutory order has been held to be the polestar for determining whether an order is "an order that affects a sustantial right made in a special proceeding" (R.C. 2505.02) and, therefore, a final appealable order. *Tilberry v. Body* (1986), 24 Ohio St.3d 117, 120, 24 OBR 308, 310, 493 N.E.2d 954, 957; *Amato v. General Motors Corp.* (1981), 67 Ohio St.2d 253, 21 O.O.3d 158, 423 N.E.2d 452.

██ Because the preliminary injunction appealed from in this case imposes a prior restraint upon the exercise of free speech, we hold that it is an order that affects a substantial right made in a special proceeding and is, therefore, a final appealable order. International's motion to dismiss this appeal is denied.

## II

██ International moves to strike or dismiss USDG's motion for a stay of execution of the preliminary injunction upon the ground that the following requirement of App.R. 7(A) has not been satisfied:

"A motion * * * for an order suspending * * * an injunction during the pendency of an appeal * * * shall * * * show the reasons for the relief requested and the facts relied upon, and if the facts are subject to dispute the motion shall be supported by affidavits or other sworn statements or copies thereof. With the motion shall be filed such parts of the record as are relevant and as are reasonably available at the time the motion is filed."

Both parties are in agreement that there is a need for an immediate resolution of this controversy. The next three weeks are critical to the economic success of both businesses. Although the need for an immediate resolution of this controversy apparently precludes the preparation and filing

of a transcript in time to assist this court, this court has been provided with substantial documentary evidence from the hearing in the trial court. The evidence received and considered by this court includes: (i) an audio tape of the radio advertisement, to which the court has listened; (ii) a typed copy of the radio ad; (iii) a story published in the Dayton Daily News that comprised the factual basis for the ad; (iv) a consent decree entered into between International and the Attorney General of Ohio in case No. 91CVH04–3316, in the Common Pleas Court of Franklin County, Ohio; and (v) Judge Gilvary's decision and order.

Furthermore, although the record is sketchy at this early stage, there does not appear to be any real dispute concerning what occurred in the trial court. At the in-chambers hearing in this case, although opposing counsel disagreed as to the proper construction and legal consequences of the record in the trial court, there was no real disagreement concerning what happened in the trial court.

We conclude that there has been substantial compliance with the requirements of App.R. 7(A), particularly when the exigency of this matter is considered. International's motion to strike or to dismiss USDG's motion for a stay of execution of the preliminary injunction is denied.

III

■ The United States Court of Appeals for the District of Columbia has identified four factors to consider in determining whether to grant a stay of an injunction, pending appeal. They are as follows:

" * * * (1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? Without such a substantial indication of probable success, there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review. (2) Has the petitioner shown that without such relief, it will be irreparably injured? * * * (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? * * * (4) Where lies the public interest? * * * " *Virginia Petroleum Jobbers Assn. v. Federal Power Comm.* (C.A.D.C.1958), 259 F.2d 921, 925, followed in *Washington Metropolitan Area Transit Comm. v. Holiday Tours, Inc.* (C.A.D.C.1977), 559 F.2d 841, 843.

■ Under the circumstances of the case before us, the third and fourth factors are merged, since there would seem to be no third parties affected other than the general public. Furthermore, consideration of the public's interest is, under the circumstances of the case before us, indistinguishable from consideration of the likely outcome of the appeal—the first factor. There is a public interest in favor of avoiding false, deceptive or misleading

advertising, but there is also a public interest in favor of protecting the right to advertise in public media, so long as the advertisement is not false, deceptive, or misleading.

In the case before us, the factors relevant to the issuance of a stay reduce to just two: (i) the likelihood that the appellant will prevail; and (ii) the relative irreparable harm that would be visited upon either party depending upon whether a stay is issued. The latter factor does not militate in favor of International. If it ultimately prevails, it will have at least some chance of establishing the adverse impact that the negative ad has had upon its business by comparing its sales in prior years, adjusted by industry-wide comparisons, together with surveying prospective customers to see how many would identify the negative ad as a reason for their decision not to patronize International.

Admittedly, International would not have an easy time proving its damages in the event that the preliminary injunction were stayed and International were ultimately to prevail. However, International's difficulties in proving its damages pale in comparison to the difficulties that USDG would have in proving its damages if the preliminary injunction were to remain in effect and USDG were ultimately to prevail. As International has pointed out, USDG is not enjoined from airing ads, generally; it is simply enjoined from airing this particular negative ad aimed at International, its competitor. It would appear to be a practical impossibility for USDG to be able to prove the extent to which its sales would have been enhanced, at International's expense, had it been permitted to air its negative ad.

If consideration of the relative irreparable injury to which each party would be exposed favors either party at all, it would seem to favor USDG.

The remaining factor to consider is the likelihood that USDG will prevail in this appeal. This is inevitably a difficult factor to apply—if we knew for sure how this appeal were going to be decided, there would be no need for interlocutory relief, we could simply issue our final judgment on appeal and be done with the case. Indeed, USDG is asking us to decide this appeal on the merits at this early stage, and dissolve the preliminary injunction. We conclude that it is premature to do so. The haste with which we have had to proceed in view of the exigency of the issue has precluded our mature deliberation of the merits of this appeal. Neither party has had the opportunity to review a transcript, prepare and submit a merits brief, and orally argue the merits after a full opportunity to consider the transcript and briefs. Nor has this court had the opportunity to consider the merits of the appeal after having had the benefit of a transcript, briefs on the merits, oral argument,

and the opportunity to conduct any independent research that might be warranted.

USDG's motion to adjudicate the merits of this appeal by dissolving the preliminary injunction is denied.

What remains as a factor for consideration is the admittedly preliminary, tentative assessment of the likelihood that USDG will prevail on the merits in this appeal. It cannot be too strongly emphasized that the present context of that consideration necessitates a tentative evaluation of the merits of the appeal; it may well be that the appeal will have a different outcome when, with the benefit of the complete appellate process, it is finally decided. Because one party or the other will be subject to a significant, arguably irreparable, injury depending upon whether the preliminary injunction is allowed to continue during the pendency of the appeal, we must consider the probable outcome of the appeal on the merits, since that affects the likelihood that any injury will, in fact, be visited upon the party prejudiced by our threshold decision.

USDG contends, and International does not dispute, that International advertised discounts of up to seventy-five percent in connection with its retail sales, and that this was based upon the "appraisal price" of the merchandise. There also seems to be no dispute that International rarely, if ever, sold its gems at retail at the full "appraisal price." This was the basis for the Ohio Attorney General's suit against International, the consent decree entered therein, and International's agreement to pay, as part of the settlement of the suit, $100,000 as and for fines, and $10,000 to reimburse the state for its litigation expenses.

International contends that it did not and does not believe that its practice of advertising seventy-five percent discounts was a false and deceptive practice, that it settled the Attorney General's lawsuit without admitting liability and for but a small fraction of its total financial exposure, and that it has not run such an ad since December 1990. International does not seriously contend that USDG's radio ad contains any actual misrepresentations of fact. Instead, International contends that the ad is misleading in that it implies that (i) International had a criminal intent to deceive its customers with the seventy-five percent discount ads; and (ii) International's deceptive practices are continuing into the present. International contends that both of these innuendos are false.

In support of its argument that USDG's ad implies that International had a criminal intent to deceive its customers, International points to the music accompanying the relevant portions of the ad, which is the theme music from the popular television series, Dragnet. This was a series which was particu-

larly popular in the 1950's, and which enjoyed a brief revival more recently. The series featured police detectives who investigated various forms of criminal activity. In each show, the perpetrators of fairly serious crimes were ultimately apprehended. Each show closed with a voice-over summarizing the punishment meted out to the offender and noting that the series was based on actual police files. The theme music was distinctive, and, to anyone who watched the original show on a regular basis, would be likely to be associated, consciously or unconsciously, with the concept of authorities apprehending and punishing perpetrators of nefarious activity.

The other feature of the USDG ad to which International points in support of its contention that the ad implies that International had a criminal intent to deceive its customers is its contrasting reference, near the end, to USDG as: "An honest jeweler that you can trust."

In support of its contention that the USDG ad implies that its deceptive sales practices are continuing in the present, International points to the phrase, "buyer beware," which is uttered at the outset, and again at the conclusion, of the ad. On the other hand, specific references to International's misconduct in the middle of the ad refer to past conduct:

" * * * The Ohio Attorney General's Office says that's what International Diamond Exchange Jewelers on Far Hills *was doing.* They agreed to settle out of court for $110,000." (Emphasis added.)

The fact that the Attorney General agreed to settle "out of court" with International would seem to imply that International had agreed to discontinue its deceptive practices. We would hope that the public would not assume that the Ohio Attorney General would agree to any settlement that would permit a merchant to continue a deceptive sales practice.

International's argument that the USDG ad implies that International's deceptive "75% discount" practice is continuing into the present is tenuous.

USDG has cited *Diamond Co. v. Gentry Acquisition Corp.* (1988), 48 Ohio Misc.2d 1, 531 N.E.2d 777. *Diamond Co.* is a carefully reasoned opinion that deals with the interplay of Ohio's Deceptive Trade Practices Act, R.C. Chapter 4165, with First Amendment considerations in the context of a prayer for a preliminary injunction enjoining advertising. Like the case before us, *Diamond Co.* involved one competitor seeking to enjoin another's ads upon the grounds that the ads were deceptive and misleading. The court in paragraph three of the syllabus stated that:

"In order to obtain an injunction pursuant to R.C. 4165.03 for alleged false or deceptive advertising in violation of the Ohio Deceptive Trade Practices

Act, R.C. Chapter 4165, the plaintiff must prove, by clear and convincing evidence, that:

"(a) The defendant made a false statement or a statement which is misleading;

"(b) The statement actually deceived or has the tendency to deceive a substantial segment of the target audience;

"(c) The deception is material in that it is likely to influence a purchasing decision; and

"(d) The plaintiff has been or is likely to be injured as a result of the advertisement."

In *Diamond Co.*, Judge McMonagle held that " * * * [i]f the challenged statement is not objectively or facially false, the plaintiff * * * has the burden of introducing some evidence that the statement in question would deceive a substantial number of the group at which the statement is aimed." *Id.* at 5, 531 N.E.2d at 782. Judge McMonagle noted that in *Coca Cola Co. v. Tropicana Products, Inc.* (S.D.N.Y.1982), 538 F.Supp. 1091, 1096, reversed on other grounds (C.A.2, 1982), 690 F.2d 312, a survey of cases revealed that although injunctive relief had been predicated upon a tendency to deceive at least twenty-five percent of the target audience, injunctive relief had never been predicated upon a tendency to deceive fifteen percent or less of the target audience. *Diamond Co., supra,* 48 Ohio Misc.2d at 6, 531 N.E.2d at 782.

We find Judge McMonagle's opinion in *Diamond Co.* to be well reasoned, and we adopt it in this case. Although Judge McMonagle did not find the plaintiff's claims in his case to be "totally unsubstantiated," he did find that the proof in that case fell short of the clear and convincing standard of proof needed to support a prior restraint on free speech. *Id.* at 8, 531 N.E.2d at 784.

Similarly, in our case, we find that International's claim that USDG's ad was misleading falls short of the clear and convincing standard needed to support the necessity for a preliminary injunction to restrain the exercise of free speech. As in *Diamond Co., supra,* International presented no evidence tending to establish that any significant percentage of its potential customers would be likely to be deceived materially by USDG's ad. Both counsel agreed that the only proof offered in the trial court on this subject was International's principal officer's testimony that one customer told him that the ad made it sound like he was a criminal. This is too anecdotal to be entitled to any evidentiary weight; it is certainly not sufficient to show that over fifteen percent of International's customers were likely to be materially deceived by the ad.

Essentially, International's loudest complaint is that the ad has a tendency to cause listeners to conclude that International knew that its "75% discount" advertising violated Ohio law when, in fact, International did not know that its ads were unlawful. We find nothing in USDG's ad that reasonably implies that International perversely maintained its "75% discount" ad campaign despite its knowledge that that campaign was unlawful. What is implied is that International maintained its deceptive pricing scheme in the hope that customers would be lured into its stores on the false assumption that a large and unusual discount was being offered from the normal price. That implication is not misleading; it is fair comment under the circumstances. The conclusion is virtually inescapable that International was, in fact, attempting to deceive prospective customers with its "75% discount" advertising. Any injury to International's business reputation has been self-inflicted.

Because we conclude that International is unlikely to prevail on the merits in this appeal and, further, that the balance of relative irreparable injury lies, if anything, in USDG's favor, USDG's motion to stay the execution of the preliminary injunction pending appeal is granted.

## IV

The trial court ordered a bond in the amount of $5,000 as a condition of the preliminary injunction. International argues that the situation is not symmetrical in this regard, that it is exposed to a much greater potential harm because of the negative nature of the ads that USDG intends to run. International has filed a memorandum and affidavit in which it argues that a supersedeas bond in the amount of $2,000,000 would be necessary to secure its damages in the event that the ultimate disposition of this appeal should be the dismissal of the appeal or the affirmance of the preliminary injunction.

We are not persuaded by International's contention that it will be exposed to damages in the amount of $2,000,000 if USDG is permitted to run the ad. Because imposing a high supersedeas bond as a condition of staying a prior restraint upon the exercise of free speech will itself have a chilling effect upon the exercise of that right, a court must be cautious in setting the amount of a supersedeas bond in that circumstance. Doubts must be resolved in favor of a lower bond amount. For this reason, and because we have not been furnished any compelling arguments in support of a different bond amount, we adopt $5,000, the amount of the bond imposed as a condition of the preliminary injunction, as the amount of the supersedeas bond.

## V

International's motion to dismiss this appeal is denied.

International's motion to strike or to dismiss USDG's motion for a stay is denied.

USDG's motion to dissolve the preliminary injunction is denied.

USDG's motion to stay the execution of the preliminary injunction pending appeal is granted.

The preliminary injunction issued by the trial court is stayed upon the condition that USDG shall post a supersedeas bond in the amount of $5,000, with a surety, and in a form satisfactory to the clerk of this court.

It is so ordered.

*So ordered.*

WOLFF and GRADY, JJ., concur.

### APPENDIX

### TEXT OF U.S. DIAMOND & GOLD
### RADIO ADVERTISEMENT

### NOVEMBER 27, 1991

... and this Christmas before you buy any jewelry at a supposed 55–75% off sale Buyer Beware.

Listen to what Rick Ellis, spokesman for the Ohio Attorney General's Office had to say as quoted from the Dayton Daily News. Ellis called the advertising practices used by International Diamond Exchange Jewelers on Far Hills false and deceptive.

What your [sic] ending up with is the consumer being lied to. You can't tell a consumer they're getting 75% off an item that six months ago they got the same 75% off and six months from now, they'll still get 75% off. "That's not a sale," quoted Ellis. The Ohio Attorney General's Office says that's what International Diamond Exchange Jewelers on Far Hills was doing. They agreed to settle out of court for $110,000. *Whoa*!! And this about one of the largest advertisers in the * * * [intentionally unintelligible]. Makes you wonder.

At U.S. Diamond & Gold Jewelers, you'll find the highest quality jewelry at intelligent prices. An honest jeweler that you can trust. We're located one-half mile east of the Dayton Mall on State Route 725. So remember, buyer beware this Christmas.