[Cite as *Nelsons v. Ohio High School Athletic Assn.*, 2018-Ohio-4169.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY


ROBERT NELSON, ET AL.,
LEGAL GUARDIANS FOR MINOR, J.R.,

                                                  CASE NO. 1-18-12

    PLAINTIFFS-APPELLEES,

    v.

OHIO HIGH SCHOOL ATHLETIC
ASSOCIATION,                                 O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Allen County Common Pleas Court
Trial Court No. CV2017 0653

Judgment Reversed and Cause Remanded

Date of Decision:   October 15, 2018


APPEARANCES:

    *Steven L. Craig and Stanley R. Evans* for Appellant

    *Robert B. Fitzgerald, Richard T. Reese and Terence R. Coates*
        for Appellees

**SHAW, J.**

{¶1} Defendant-Appellant, the Ohio High School Athletic Association ("OHSAA") appeals the February 8, 2018 judgment of the Allen County Court of Common Pleas granting the request for injunctive relief filed by Robert and Nicole Nelson (collectively the "Nelsons") as legal guardians of J.R., and finding J.R. eligible to participate in interscholastic athletics at Lima Senior High School, thereby overriding the decision of the OHSAA's Executive Director Office on J.R.'s ineligibility.

*Factual Background*

{¶2} J.R. is a minor, who was born in 2002 in New York and is a United States citizen. J.R. moved to St. Thomas, U.S. Virgin Islands, with his biological parents, who remain residing there.

{¶3} In August of 2016, J.R. moved to Lima, Ohio to live with the Nelsons. The Nelsons filed an application to become J.R.'s legal guardians on August 25, 2016, which was granted on January 27, 2017. During the 2016-2017 school year, J.R. attended middle school as an eighth grade student and then matriculated into Lima Senior High School as a ninth grade student for the 2017-2018 school year. J.R. sought to participate in interscholastic basketball, track, lacrosse, and any other athletic endeavor of his choice while attending Lima Senior. Lima Senior is a

Case No. 1-18-12

current member school of the OHSAA, and was also a member school during the 2017-2018 school year.

{¶4} On September 22, 2017, John Zell, Director of Athletics at Lima Senior, emailed Roxanne Price, Director of Compliance and Sporting Behavior in the OHSAA's Executive Director's Office inquiring of J.R.'s eligibility to participate in interscholastic athletics at Lima Senior. Zell did not mention J.R.'s name, but simply stated "We have a 9th grade athlete whose parents do not live in Ohio. The student is living with another family of no relation who have had custody pursuant to a court order for over one year. They have been residents of Ohio for over one year. Please advise." (Def. Ex. D.)

{¶5} On September 25, 2017, Price responded to the email directing Zell to OHSAA Bylaw 4-6-3, which states:

> **A student whose parents reside outside the state of Ohio will be ineligible for interscholastic athletics in a member school.**

(2017-2018 OHSAA Handbook, Def. Ex. B at 51).

{¶6} There are several exceptions to Bylaw 4-6-3. Exception 1 to Bylaw 4-6-3 states:

> **EXCEPTION 1: The Executive Director's office may declare a student who is the subject of a custody order issued by a court of proper jurisdiction conferring custody upon a grandparent, aunt, uncle or sibling who resides in Ohio, if, in the sole discretion of the Executive Director's office, Executive Director's office determines that the purpose of this change in custody was not for athletic reasons, but purely for the best interest of the student in**

**terms of the student's mental, physical and educational well-being. The Executive Director's office may grant eligibility to a student whose legal custodian, pursuant to a court order, has had legal custody of the student for a minimum of one year and who has become a bona fide resident of the state of Ohio. Such a student is ineligible until declared eligible by the Executive Director's office.**

{¶7} Price explained her response to Zell that: "Bylaw 4-6-3 indicates that an individual who has had custody of a student for one year and that individual becomes a resident of Ohio, the student can meet exception 1. This means that the custodians had to have had custody for one year prior to moving to Ohio…with the student. If the custodians were already living in Ohio and the student came to live with them and then they became the custodians, this will not permit the use of exception 1. There is no provision for a student whose parents do not live in Ohio to be able to become eligible after the new custodians, who are not a primary relative, have had custody for a year. The custodians and the student would have had to move to Ohio together and the custodians would have had to be legal custodians prior to the move to Ohio." (Def. Ex. D.)

{¶8} Price asked Zell for further clarification, " I can't ascertain from the question posed, if the student and his legal custodians moved to Ohio together and if the legal custody preceded the move to Ohio. I also do not know if they have legal custody or 'guardianship.' Please provide more information." (Def. Ex. D.)

**{¶9}** In a reply email, Zell informed Price that "the parents are the legal guardians and not custodial parents. If they are legal guardians in essence they are his parents…correct?" (Def. Ex. D.) Zell further inquired whether there would be a need to meet any of the exceptions for Bylaw 4-6-3. Price responded that for purposes of Bylaw 4-6-3, "parents are defined as 'biological' or adoptive parents." (Id.) She further explained that "[i]f the individuals in your previous email are not the student's actual biological or adoptive parents, and the biological or adoptive parents do not live in Ohio, then the legal custodians must be a primary relative (aunt, uncle, grandparent, sibling) in order for the student to have any eligibility, at any time, at any member school." (Id.)

**{¶10}** Thereafter, the Nelsons retained counsel who contacted legal counsel for the OHSAA on October 30, 2017, to further inquire of the initial ruling from the Executive Director's Office on J.R.'s ineligibility under bylaw 4-6-3. Legal counsel for the OHSAA reiterated the Association's rationale for the inapplicability of Exception 1 to J.R.'s case previously given by Price. Specifically, because (1) the Nelsons were not a parent, grandparent, uncle, aunt or sibling of J.R.; and (2) because Nelsons were already residents of Ohio prior to J.R. moving to the state and obtaining guardianship of him, and thus since they did not move to Ohio together after having legal custody for one year, the circumstances outlined in Exception 1

did not apply. The Nelsons' counsel further inquired if J.R. could be deemed eligible under Exception 9 to Bylaw 4-6-3, which states that:

> **Exception 9: A student may be declared eligible for interscholastic athletics when the student's parents are citizens of the United States who reside outside the United States. The student is not eligible until declared eligible by the Executive Director's office upon submission of the appropriate documents.**

(2017-2018 OHSAA Handbook, Def. Ex. B at 5). The OHSAA's legal counsel indicated that Exception 9 did not apply. He explained that even though J.R.'s parents, by virtue of being citizens of the U.S. Virgin Islands, are United States citizens thus satisfying the first portion of the exception, the second component of the exception is not satisfied because St. Thomas is a United States territory and therefore J.R.'s parents do not "reside outside of the United States" under the interpretation of the exception by the Executive Director's Office. In other words, the Executive Director's Office interpretation of the United States under this exception includes all U.S. territories and in this context treats St. Thomas as no different from Indiana, Kentucky, or any other state.

*Procedural History*

{¶11} On November 20, 2017, the Nelsons, as legal guardians, filed a verified complaint for injunctive and other equitable relief on behalf of J.R. in the Allen County Court of Common Pleas seeking to enjoin the OHSAA's enforcement of its determination of J.R.'s ineligibility to participate in interscholastic athletics at

Lima Senior. As the basis for the complaint, the Nelsons alleged the OHSAA's decision regarding J.R.'s ineligibility on the grounds that neither Exception 1 or Exception 9 applied to his case to be arbitrary and capricious. The Nelsons also filed a motion for injunctive and equitable relief and included an affidavit from their counsel indicating that he had attempted to resolve the matter with the OHSAA's legal representative over the course of the preceding month, but to no avail.

{¶12} On November 21, 2017, the trial court granted a Temporary Restraining Order enjoining the OHSAA from enforcing its determination of J.R.'s ineligibility and permitting J.R. to participate in interscholastic athletics while the proceedings were pending. [1] The OHSAA subsequently filed an answer and response. In its answer, the OHSAA asserted *inter alia* the affirmative defense that the trial court lacked jurisdiction to hear the case because the Nelsons failed to exhaust their administrative remedies by not pursing the internal appeal process put in place by the OHSAA and its member schools.

*The Trial Court's Decision*

{¶13} On December 8, 2017, the trial court held a hearing on the Nelsons' motion for injunctive relief. Both Robert and Nicole Nelson testified in support of their motion. The OHSAA presented the testimony of Roxanne Price, the

---

[1] After the TRO was granted, a visiting judge was assigned to the case by the Supreme Court of Ohio due to the recusal of the judge originally assigned to the case.

representative of the Executive Director's Office who made the initial determination on J.R.'s ineligibility. Several exhibits were admitted by both sides.

{¶14} On February 8, 2018, the trial court issued a decision granting the Nelsons' request for injunctive relief. Specifically, the trial court found that the OHSAA's determination that Exception 1 and Exception 9 to the residency Bylaw 4-6-3 do not apply to J.R.'s circumstances to be arbitrary and capricious.

{¶15} With respect to Exception 1, the trial court found the following regarding the second section of the exception pertaining to legal custodians:

> **This Court agrees with the OHSAA that By-law 4-6-3 Exception 1 is not ambiguous. While not ambiguous, this Court agrees with the Plaintiffs that the Exception is arbitrary and capricious. The intent of the Rule was to prevent guardian shopping for the purpose of making an out-of-state athlete immediately eligible to play a sport. If J.R.['s] guardianship in Ohio must be in effect for one year before J.R. would become eligible, the purpose of the Rule exception would be faithfully implemented. Under the present Rule, J.R. would never become eligible to participate in sports at Lima Senior while in high school. Surely, such a Rule is arbitrary and capricious.**

(Doc. No. 14 at 10).

{¶16} As for the interpretation of Exception 9 by the Executive Director's Office to include the United States territories in the definition of the "United States," the trial court concluded that the "OHSAA views the United States in an expansive manner as to disqualify J.R. from participating in interscholastic sports. OHSAA's

interpretation of the word United States is at best wrong and at worst 'arbitrary and capricious.' " (Id. at 14).

**{¶17}** The trial court found that the Nelsons had proven by clear and convincing evidence that J.R. was entitled to injunctive relief on the grounds that "Exception 1 to rule 4-6-3 was arbitrary in part as written and [Exception 9 was] arbitrarily and capriciously enforced when OHSAA interpreted the 'United States' to include the territory of the Virgin Islands." (Doc. No. 14 at 14). The trial court further found that J.R. would "suffer irreparable harm if he is not permitted to participate in interscholastic athletics for his entire high school" and that "there are no Third parties identified who will be unjustfully [sic] harmed if this permanent injunction is granted; and the public interest will be served by the injunction. Should OHSAA believe that youngsters who move here without their parents from the U.S. territories should not participate, the Association can clearly amend the Rule accordingly." (Id. at 14-15)

**{¶18}** Based on this reasoning, the trial court issued a permanent injunction enjoining the OHSAA from enforcing its decision on J.R.'s ineligibility to participate interscholastic athletics and ordered the following:

> **(1) the OHSAA's conduct relating to J.R. and its finding that J.R. is ineligible to participate interscholastic athletics at Lima Senior High School is arbitrary and capricious;**

**(2) J.R. is eligible to participate in interscholastic athletics at Lima Senior High School during the 2017-2018 school year so long as he remains eligible in all other respects; and,**

**(3) J.R.'s eligibility as granted through this order shall remain in place for the duration of J.R.'s enrollment at Lima Senior High School so long as no other change of legal guardianship takes place and J.R. meets all other requirements for remaining eligible.**

(Doc. No. 14 at 16).

{¶19} The OHSAA filed this appeal, asserting the following assignments of

error.

**ASSIGNMENT OF ERROR NO 1.**

**THE TRIAL COURT ERRED IN ISSUING A PERMANENT INJUNCTION AGAINST THE OHSAA AND SUBSTITUTING THE TRIAL COURT'S INTERPRETATION OF THE OSHAA BYLAWS FOR THE INTERPRETATION OF THE OHSAA'S MEMBER SCHOOLS.**

**ASSIGNMENT OF ERROR NO 2.**

**THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN THE TRIAL COURT: (A) ADVANCED AND CONSOLIDATED THE TRIAL ON THE MERITS WITH THE HEARING ON APPELLEES' APPLICATION FOR A PERMANENT INJUNCTION; (B) HELD THAT APPELLEES' WERE NOT REQUIRED TO APPEAL THE RULING OF THE EXECUTIVE DIRECTOR'S OFFICE OF J.R.'S INELIGIBILITY THROUGH THE OHSAA'S APPEALS PROCESS BECAUSE SUCH AN APPEAL WOULD BE A FUTILE ACT; (C) BASED ON ITS DECISION, AT LEAST IN PART, ON A TRIAL EXHIBIT THAT THE TRIAL COURT RULED INADMISSIBLE; (D) FOUND THAT J.R. WILL SUFFER IRREPARABLE HARM; AND (E) FOUND THAT THE ISSUANCE OF A PERMANENT INJUNCTION**

**AGAINST THE OSHAA WILL INFLICT NO HARM ON OTHERS.**

*First Assignment of Error*

{¶20} In its first assignment of error, the OHSAA argues that the trial court erred in issuing a permanent injunction enjoining the Association from enforcing its determination of J.R.'s ineligibility to participate in interscholastic athletics because he did not meet the eligibility requirement or exceptions in Bylaw 4-6-3. Specifically, the OHSAA claims that the trial court unreasonably interfered with the internal affairs of the Association by declaring: (1) that section 2 of Exception 1 to Bylaw 4-6-3 as written is arbitrary and capricious; and (2) that the Executive Director's Office interpretation of the term "United States," as used in Exception 9, to include the United States territories is too expansive and, therefore, is also arbitrary and capricious.

*Standard of Review*

{¶21} "In determining whether a preliminary injunction is warranted, a trial court looks to four factors: (1) whether the evidence presents a substantial likelihood that the plaintiff will prevail on the merits; (2) whether denying the injunction will cause the plaintiff to suffer irreparable injury; (3) whether granting the injunction will cause unjustifiable harm to third parties; and (4) whether the injunction serves the public interest." *Elec. Classroom of Tomorrow v. Ohio Dep't of Educ.*, 2017-Ohio-5607, ¶ 33 10th Dist. Franklin Nos. 16AP-863, 16AP-871 citing *Cuyahoga*

Case No. 1-18-12

*Re-Entry Agency v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-740, 2012-Ohio-2034, ¶ 31.

**{¶22}** "A party seeking a permanent injunction must show that the injunction is necessary to prevent irreparable harm and that the party does not have an equitable remedy at law." *Bd. of Directors, Maumee Watershed Conservancy Dist. v. Army*, 3d Dist. Van Wert No. 15-17-09, 2017-Ohio-9082, ¶ 23, citing *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d, 260, 267 (2001). The decision to grant or deny an injunction lies within the discretion of the trial court and generally will not be reversed absent an abuse of discretion. *Youngstown City Sch. Dist. Bd. of Educ. v. State*, 10th Dist. Franklin No. 17AP-775, 2018-Ohio-2532, ¶ 9. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*The Nature of the OHSAA*

**{¶23}** According to its handbook, the OHSAA is a 111-year old unincorporated, non-profit association that regulates and administers interscholastic competition. (2017-2018 OHSAA Handbook, Def. Ex. B at 5). Approximately 821 high schools and 900 7th and 8th grade schools belong to the OHSAA. (Id.) Membership to the OHSAA is voluntary and there are no fees assessed to the schools to maintain membership. (Id.) When a school becomes a member of the OHSAA, it agrees to follow the regulations approved by the membership. (Id.)

-12-

{¶24} The conduct of the OHSAA is governed by its constitution and bylaws. The specific procedures by which the OHSAA's constitution and bylaws may be amended are set forth in Article 8 of the Association's constitution, which permits amendment to the constitution and bylaws through "a referendum vote of the member schools in which the principal of the member school shall case the vote for the school." (Art. 8-1-4, 2017-2018 OHSAA Handbook, Def. Ex. B at 37.) The OHSAA's constitution further provides that "[a]ny proposed amendment shall be adopted if it receives a majority of the votes cast" and that "[v]oting on referendums to amend the constitution shall be conducted between May 1 and May 15." (Arts. 8-1-4, 8-1-8, 2017-2018 OHSAA Handbook, Def. Ex. B at 37.)

{¶25} As members of the Association, the schools have agreed to delegate certain duties and authority to Executive Director's Office. According to the OHSAA's constitution "[t]he Executive Director or another administrative staff member designated by the Executive Director shall decide all questions and interpretations of the Constitution, Bylaws, and Regulations and shall impose and enforce penalties." (Art. 6-1-2, 2017-2018 OHSAA Handbook, Def. Ex. B at 33)

{¶26} In May of 2012, the member schools authorized the OHSAA Board of Directors to establish an Appeals Process "with exclusive jurisdiction to hear student eligibility appeals." (2017-2018 OHSAA Handbook, Def. Ex. B at 26.) Recently, in May of 2017, the member schools voted to expand "the Appeals Panel's

jurisdiction to hear all appeals related to rulings emanating from the Executive Director's Office." (Id.) "[T]he Appeals Panel does not have any authority to alter, amend, change or delete or add to the Bylaws. Only the members schools have the authority to do this and only then through the referendum process." (Id.) The OHSAA Handbook further clarified that the Appeals Panel does not have authority to waive the requirements of the Bylaws and that "the standard of review to be used by the Appeals Panel is simply to determine whether the Executive Director's Office, in rendering its ruling, made a mistake of fact, mistake of interpretation/application of the Bylaw in question or neglected to consider another Bylaw that may be applicable." (Id. at 27)

*Relevant Law*

**{¶27}** As a preliminary matter, we note that other appellate districts have held that the right to participate in interscholastic athletics is not constitutionally protected. *Ulliman v. Ohio High Sch. Athletic Assn.*, 2009-Ohio-3756, ¶ 61, 184 Ohio App. 3d 52, 65; *Menke v. Ohio High School Athletic Assn.*, 2 Ohio App.3d 244, 246 (1981). On this basis, "[t]he claim of arbitrariness, therefore, is not evaluated under constitutional standards, but is governed by *State ex rel. Ohio High School Athletic Ass'n. v. Judges of the Court of Common Pleas of Stark Cty.* 173 Ohio St. 239, 247, (1962), which holds that OHSAA internal-affairs decisions will

be accepted as conclusive, in the absence of arbitrariness." *Ulliman*, 184 Ohio App. 3d 52, 65, 2009-Ohio-3756, ¶ 61.

{¶28} In *State ex rel. Ohio High School Athletic Ass'n. v. Judges*, the Supreme Court of Ohio stated the general rule applicable to judicial review of internal decisions made by voluntary associations:

> **The decisions of any kind of voluntary society or association in disciplining suspending, or expelling members are of a quasi judicial character. In such cases the courts never interfere except to ascertain whether or not the proceeding was pursuant to the rules and laws of the society, whether or not the proceeding was in good faith, and whether or not there was anything in the proceeding in violation of the laws of the land. * * ***

*Id.*, 173 Ohio St. at 247, (1962), quoting 4 American Jurisprudence, 472, Section 27. *See*, *also*, 6 Ohio Jurisprudence 3d Associations, Section 4, Judicial supervision or intervention.

{¶29} Thereafter, the Supreme Court of Ohio again had the occasion to review this issue in *Lough v. University Bowl, Inc.*, 16 Ohio St.2d 153 (1968). The Court in *Lough* acknowledged the general rule is that "courts will not interfere with the quasi-judicial decisions of voluntary associations unless such decisions are *alleged and shown to be* the result of fraud, arbitrariness, or collusion." *Id.* at 154, citing *State ex rel. Ohio High School Athletic Ass'n. v. Judges*, 173 Ohio St. 239, 247 (1962); *Wedemeyer v. U.S.S. F.D.R (CV-42) Reunion Assoc.*, 3d Dist. Allen No. 1-09-57, 2010-Ohio-1502, ¶ 26. In reviewing relevant case authority on the issue,

the Supreme Court of Ohio observed that the jurisprudence "almost without exception, include[s] the criteria which warrant[s] jurisdiction under the general rule, such *as arbitrary action in violation of the constitution and rules of the association, or a procedural scheme which is not in accord with due process*." *Id.*, citations omitted (emphasis added). Accordingly, the Supreme Court of Ohio in *Lough* held that:

> **[W]here the duly adopted laws of a voluntary association provide for the final settlement of disputes among its members, by a procedure not shown to be inconsistent with due process, its action thereunder is final and conclusive and will not be reviewed by the courts in the absence of arbitrariness, fraud, or collusion.**

*Lough*, 16 Ohio St.2d at 155-56, citing *State ex rel. Ohio High School Athletic Ass'n. v. Judges*, *supra*; *Gallagher v. Harrison*, 86 Ohio App. 73 (1949); *Boblitt v. Cleveland, C.C. & St. L. Ry. Co.*, 73 Ohio App. 339 (1943).

*Analysis*

{¶30} In acknowledgement of the general rule of judicial restraint, the Nelsons alleged in their complaint that the OHSAA's decision not to apply Exceptions 1 and 9 to J.R. was arbitrary. On appeal, the Nelsons primarily take issue with the manner in which the member schools have chosen to word the bylaws, along with its exceptions, and the interpretations made by the Executive Director's Office of Bylaw 4-6-3 and its exceptions on three grounds. It is the conclusion of this Court that none of these issues are sufficient to invoke judicial intervention

under the standards set forth by the Supreme Court of Ohio in *State ex rel. Ohio High School Athletic Ass'n. v. Judges* and *Lough* above.

**{¶31}** First, with respect to Exception 1 to Bylaw 4-6-3, the Nelsons claim that the OHSAA arbitrarily limited the definition of the term "parent" only to a person who is the biological or adoptive parent of the student for purposes of determining residency. In support, the Nelsons point to a former definition used in the bylaws pertaining to transfers which appears to contemplate a more expansive definition of the term "parent" to include "the person to whom parenting rights and responsibilities have been allocated pursuant to court order. In the event a student has been temporarily or permanently removed from the home, 'parent' means the person or governmental agency with legal or permanent custody." (Doc. No. 14 at 7); *see*, *also*, *Ulliman v. Ohio High Sch. Athletic Assn.*, 184 Ohio App. 3d 52, 67,2009-Ohio-3756, ¶ 17.

**{¶32}** However, the OHSAA presented testimony and supporting documentation at the hearing on the Nelsons' motion for injunctive relief establishing that the member schools specifically voted as a referendum item in 2013 to limit the definition of the term parent as it pertained to Bylaw 4-6-3 to mean "biological or adoptive."[2] (Doc. No. 19 at 139, Def. Ex. I at 7). Notably, even the

---

[2] Price testified that the member schools voted for the OHSAA to view "the custody between parents differently than custody between someone who is a nonparent." (Doc. No. 19 at 139). She further testified that according to the 2008-2009 OHSAA Handbook, Bylaw 4-6-3, at issue in this case, stated that "Note: a

Case No. 1-18-12

trial court found this portion of Exception 1 to be unambiguous and does not appear to base its decision regarding arbitrariness on the part of the OHSAA on this provision in the exception.

{¶33} The second and third grounds alleged by the Nelsons in support of their claim that the OHSAA's conduct was arbitrary with respect to its determination of J.R.'s ineligibility form the basis of the trial court's decision to grant the permanent injunction. Specifically, the second ground alleged is the legal custodian provision of Exception 1, which states that:

> **The Executive Director's office may grant eligibility to a student whose legal custodian, pursuant to a court order, has had legal custody of the student for a minimum of one year and who has become a bona fide resident of the state of Ohio. Such a student is ineligible until declared eligible by the Executive Director's office.**

{¶34} Price testified that the language "has had legal custody of the student for a minimum of one year and who has become a bona fide resident of the state of Ohio" imposes the requirement that the legal custodian: (1) be a legal custodian *prior to* the move to Ohio; and (2) has moved to Ohio *with the student* in order for the student to be eligible to participate in interscholastic athletics under this portion of the exception. (Doc. No. 19 at 137; Def. Ex. D). Price also clarified that one of the reasons there is a residency requirement is to *prevent* member schools from

biological or adoptive parent must reside in Ohio. A change in custody/guardianship does not satisfy the requirement of this bylaw." (Doc. No. 19 at 126).

-18-

"*recruiting across the borders*." (Doc. No. 19 at 143)(emphasis added).[3] Thus, contrary to the findings of the trial court on this issue, there is nothing in the testimony or in the OHSAA bylaws pertaining to Exception 1 to indicate that the only purpose behind the one-year residency requirement is to merely *delay* the "immediate" eligibility of out-of-state transfers.

{¶35} The final and third ground is Exception 9 to Bylaw 4-6-3 which simply states:

> **A student may be declared eligible for interscholastic athletics when the student's parents are citizens of the United States who reside outside the United States.**

{¶36} Price testified that in the twelve years of executing her responsibilities for the OHSAA, which include fielding eligibility questions on a daily basis, the Executive Director's Office has never excluded United States territories from the term the "United States" when making interpretations and administering Exception 9 to Bylaw 4-6-3. Price explained that there has always been an assumption when interpreting the exception that the United States territories are included as part of the United States. (Doc. No. 19 at 161). Specifically, Price stated that the ineligibility ruling is "no different whether the ruling is for a student from Puerto

---

[3] The Nelsons direct our attention to a deposition that Price gave in a prior case concerning eligibility involving a non-public school to argue that the original intent of Bylaw 4-6-3 was to prevent recruiting by non-public, or private schools. Price disputed this characterization at the hearing and stated that "we have had more incidents of recruiting this year and the previous and last year with individuals at public schools. But to be able to grant eligibility to any individual is basically swallowing up the residency bylaw altogether and in some ways the transfer bylaw and the membership does not want that." (Doc. No. 19 at 143).

Rico, Guam, American Samoa than it is from a student from Michigan. We're not writing, oh, this includes the United States and its territories. We're just making a ruling based on the same perception that its included." (Id). Notably, the Nelsons provided no evidence which contradicted Price's testimony as to this point.

**{¶37}** Notwithstanding the decision of the trial court which determined that the legal custody provision of Exception 1 *as written* was arbitrary and capricious, and Executive Director's Office *interpretation* of Exception 9 was "at best wrong and at worst 'arbitrary and capricious,' " "The Supreme Court of Ohio has defined "arbitrary" in other contexts as " 'without adequate determining principle; * * * not governed by any fixed rules or standard.' " *Ulliman*, *supra*, citing *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981), quoting Black's Law Dictionary (5th Ed.); (Doc. No. 14 at 10,14). .

**{¶38}** The record indicates that Bylaw 4-6-3 and its exceptions in its current form had been adopted properly, in compliance with the OHSAA constitution. Moreover, the evidence presented at the hearing on the Nelsons' request for injunctive relief established that the member schools specifically sought to limit the definition of "parent" and to view nonparent custody differently than parent or primary relative custody and achieved this through its referendum process. The evidence at the hearing further established that, even though the term "United States" is not defined in the Bylaw, and we note once again that contrary to the trial

court's findings, there is significant Federal legal authority as to the "United States" and "its territories" supporting both sides of this question. Moreover, the testimony established that the term "United States" has been consistently interpreted by the Executive Director's Office to include the United States territories when administering Exception 9.

{¶39} Thus, the uncontroverted evidence at the hearing establishes that, in this instance, the conduct of the OHSAA, by virtue of its Executive Director's Office, was merely interpreting and enforcing the bylaws pursuant to the authority delegated to it by the member schools. In other words, we simply do not find support in the record for the trial court's determination that the manner in which the OHSAA's made its decision regarding J.R.'s ineligibility was arbitrary and capricious—as those terms are defined in *State ex rel. Ohio High School Athletic Ass'n. v. Judges* and *Lough*, or that its procedure in rendering its decision was inconsistent with due process—which in this instance notably even included an internal appeals process although the Nelsons chose not to use it. Accordingly, we conclude that the Nelsons have failed to show that the OHSAA's decision was the result of arbitrariness so as to warrant judicial intervention or interference with the Association's decision on J.R.'s ineligibility.

{¶40} Consequently, we conclude that the trial court erred when it found that the Nelsons had a substantial likelihood of succeeding on the merits in their request

for injunctive relief. We need not address the remaining prongs of the preliminary injunction standard because a finding in the Nelson's "favor on the likelihood of success is required to justify 'intrusion into the ordinary processes of administration and judicial review.' " *Ulliman v. Ohio High Sch. Athletic Assn.*, *supra*, ¶ 70, quoting *Internatl. Diamond Exchange Jewelers, Inc.*, 70 Ohio App.3d 667, 672 (2d Dist.1991). Accordingly, we conclude that the trial court erred in granting the Nelsons' motion and in issuing a permanent injunction enjoining the OHSAA from enforcing its determination of J.R.'s ineligibility to participate in interscholastic athletics. The OHSAA's first assignment of error is sustained.

*Second Assignment of Error*

**{¶41}** Due to our resolution of the first assignment of error, we find the arguments raised in the second assignment of error to be moot. Therefore, we decline to address the issues raised therein.

**{¶42}** Based on the foregoing, the judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

***Judgment Reversed and***
***Cause Remanded***

**ZIMMERMAN and PRESTON, J.J, concur.**

**/jlr**

-22-